HOLCOMB *v.* CITY OF CLARKSDALE.

June 8, 1953

No. 38917 34 Adv. S. 93 65 So. 2d 281

*Holcomb & Curtis,* for appellant.

*Maynard, Fitzgerald & Maynard,* for appellee.

Holmes, J.

The appellant, W. L. Holcomb, Inc., filed its original bill in the Chancery Court of Coahoma County against the appellee, City of Clarksdale, seeking to have declared invalid a zoning ordinance of the City of Clarksdale adopted November 12, 1946, insofar as it restricts the use of appellant's property, described as Lots 1 and 2, in Block 18, Dorr Addition No. 1 to the City of Clarksdale, Mississippi.

The power of the city to enact the ordinance and the regularity and legality of the proceedings resulting in the enactment of the ordinance are not challenged, but it is claimed by the appellant that the restriction of the use of said property to the classification designated in said ordinance as "A" Residence District is unreasonable, arbitrary, and confiscatory, and deprives the appellant of the beneficial use of said property in violation of its rights under the fifth and fourteenth amendments to the Constitution of the United States, and Sections fourteen and seventeen of the Mississippi Constitution of 1890. The appellant seeks by its suit to have the property in question reclassified as "B" Commercial District instead of "A" Residence District as designated in the ordinance.

Certain of the facts are undisputed. Beginning on November 12, 1940, the City of Clarksdale enacted a series of zoning ordinances, and on November 12, 1946, the city enacted the comprehensive zoning ordinance now under review. In February, 1949, Mrs. T. E. Moore, who then owned the property and who also owned property contiguous thereto on the west side thereof, petitioned the board of mayor and commissioners to re-zone the property from "A" Residence District to "B" Commercial District. A public hearing pursuant to notice was held on said petition on March 3, 1949, and upon protest being made to said re-zoning, Mrs. Moore withdrew her petition. On April 15, 1952, on the petition of the appellant,

said property was re-zoned from "A" Residence to "B" Commercial. On May 20, 1952, on the petition of certain residents of the Oakhurst Subdivision, which included the property in question, the said property was re-zoned from "B" Commercial to "A" Residence. Except for the short period from April 15, 1952, to May 20, 1952, the property in question has under the zoning ordinances of the city been included within the classification of "A" Residence. Subsequent to March 3, 1949, on which date the petition of Mrs. T. E. Moore to have the property re-zoned from "A" Residence to "B" Commercial was withdrawn, the appellant purchased the property in question for $7,000, buying it, as he said, for apartment house use and knowing at the time that the property was then classified under the zoning ordinance of the city as "A" Residence. Section 3 of the zoning ordinance of the city provided that no building or premises should be used and no building should be thereafter erected or structurally altered, unless otherwise provided in the ordinance, except for one or more of the following uses: one-family dwellings, two-family dwellings, apartment houses, schools, libraries, churches, government-owned hospitals and nurses' homes, including any business located on hospital grounds, farming and truck gardening, boarding houses, commercial greenhouses, parks and playgrounds, and accessory buildings such as are usually incident to the maintenance of any of the above described buildings or houses, including one private garage located not less than sixty feet from the front lot line, or a private garage built in or being a part of the main building.

Section 4 of the ordinance provides as follows: "Uses customarily incident to any of the above uses when located on the same lot and not involving the conduct of a business; including also home occupations engaged in by the occupants of a dwelling not involving the conduct of a business on the premises; and including also the office of a physician, surgeon, dentist, engineer, lawyer, artist, or member of a similar profession when situated in the

same dwelling used by such physician, surgeon, dentist, engineer, lawyer, artist or member of similar profession, as his or her private dwelling; provided no name plate exceeding one (1) square foot in area, containing the name and occupation of the occupant of the premises, nor a sign exceeding eight (8) square feet in area appertaining to the lease, hire or sale of a building or premises, nor advertising sign of any other character shall be permitted in any 'A' Residence District.''

Section 8 of the ordinance provided ''that the lawful use of land existing at the time of adoption of this ordinance, although such use does not conform to the provisions hereof, may be continued, but if such nonconforming use is discontinued, any future use of said premises shall be in conformity with the provisions of this ordinance.''

The proof shows that the property in question is a part of a large residential area which area is separated from the main business section of the city by the Sunflower River, and travel between the two areas, that is to say, the said residential section and the said business section of the City of Clarksdale, is over a bridge across the river.

Three witnesses testified on behalf of the appellant, namely, W. L. Holcomb, the president of the appellant corporation; W. A. Ritchie, engaged in the real estate business, and Mark Wilson, engaged in the mortgage loan business. These witnesses related their familiarity with real estate values in the City of Clarksdale generally and in the area here involved particularly, and stated that the property in question was not adaptable to residential use, basing their testimony largely upon their opinion that the property if classified as ''B'' Commercial would command a higher value on the market. They did not deny that the property might be adapted to apartment houses or that it did not possess some substantial value for residential use. They did not attack the general scheme of

zoning under the ordinance. On the other hand, four witnesses testified for the appellee, including the City Engineer of the City of Clarksdale, the Mayor of the City, the president of the Clarksdale-Coahoma County Chamber of Commerce, and a member of the board of trustees of the city public schools. These witnesses testified that the property in question was adaptable to both residential and apartment houses and that it was by reason of its location and the area in which it was located proper to be classified as residential property. At the conclusion of the hearing, the chancellor rendered a decree dismissing the original bill and from this decree this appeal is prosecuted.

Appellant here assigns as error, first, that the trial court was in error in holding the ordinance insofar as it affects the property in question as reasonable, and, second, that the trial court was in error in not excluding from the evidence a resolution of the board of trustees of the public schools of the city protesting against the reclassification of said property from "A" Residence to "B" Commercial, and, third, that the court erred in not granting the request of the appellant to put the witnesses under the rule.

In passing upon the action of the trial court in adjudging the ordinance to be reasonable and dismissing the original bill, certain well recognized principles are to be borne in mind and they are as follows:

"Ordinarily a change in zoning regulations involving a single or a very few properties should be made only where new or additional facts or other considerations materially affecting the merits have intervened since the adoption of the regulations, and whether such a change will be permitted depends on whether the change is reasonably related to the public welfare." 62 C. J. S., p. 467.

"A zoning ordinance must be construed as a whole, and it may not be dissected and considered as a

multitude of ordinances having no relation to the general scheme of zoning." 62 C. J. S., p. 481.

■■ "The classification of property for municipal zoning purposes is a legislative rather than a judicial matter, as are the size, extent, and boundaries of zones. ■■ As a general rule the courts will not interfere in such matters or substitute their own judgment for that of the municipality, although the action of the municipality is subject to judicial review as to whether it is reasonable, arbitrary, discriminatory, confiscatory, or an abuse of discretion. The courts will not set aside the municipality's classification if its validity is fairly debatable, but will do so only if its invalidity is clear." 62 C. J. S., pp. 560-561.

■■ "All presumptions must be indulged in favor of the validity of a zoning ordinance if it is within the legislative power of the city. Such an ordinance is presumed to be reasonable and for the public good. ■■ The presumption of reasonableness must be applied to the facts of the particular case, and it applies to rezoning as well as to the original zoning regulation, but not with the same weight, the presumption being that the zones are well-planned and arranged and are to be more or less permanent, subject to change only to meet a genuine change in conditions. ■■ It is presumed that the legislative body investigated and found conditions such that the legislation which it enacted was appropriate, and that it acted wisely, and with full knowledge of the conditions, that it intended a reasonable and legal classification and had sufficient reason to make the classification that it made, that it did what was necessary to make the ordinance valid, and that the regulation is in the interest of the community as a whole." 62 C. J. S., pp. 565-566.

■■ "The one assailing the validity of the zoning ordinance has the burden of proof to establish that the ordinance is invalid or unreasonable or arbitrary with respect to his property, that there is no permissible interpretation

which justified its adoption as a reasonable exercise of the police power of the state, or that the ordinance will not promote the safety, order, convenience, prosperity, and general welfare of the public; and in the absence of proof to the contrary, there is no duty on the municipality to sustain the reasonableness of the ordinance or to prove that it is necessary or desirable. A person seeking a change in a zoning ordinance has the burden of proving a public need for the amendment in question.'' 62 C. J. S., pp. 567-568.

Upon a review of the entire record and applying the legal principles hereinbefore set forth, we are of the opinion that the appellant failed to meet the burden of proof resting upon it to establish that the ordinance in question is invalid or arbitrary or unreasonable as to its property, and certainly the proof on behalf of the appellant is insufficient to clearly establish the invalidity of the ordinance as to said property. We are of the opinion, therefore, that the trial court was not in error in holding the ordinance in question valid and reasonable as to the property of the appellant.

The appellant further contends that the trial court erred in not excluding from the evidence on the objection of the appellant the resolution of the Board of Trustees of the Clarksdale Municipal Separate School District opposing a change in the ordinance so as to classify the property in question as ''B'' Commercial instead of ''A'' Residence. On objection of the appellant to this evidence, the trial court reserved its ruling. No request was made by the appellant before the close of the evidence that the court rule on its objection. It is well settled in this jurisdiction that ██ ██ where objection is made to evidence and the court reserves its ruling, the objector will be deemed to have waived his objection unless he requests a ruling thereon before the close of the evidence. Mallory, et al. v. Walton, et al., 119 Miss. 396, 81 So. 113. It was also held in the case of Sun Oil Company v. Allen, et al.,

195 Miss. 555, 16 So. 2d 26, ▇▇ ▇▇ that where no ruling on the admissibility of evidence is obtained from the chancellor prior to final decree, it cannot be assumed on appeal that that evidence was considered by the chancellor if it was in fact incompetent. See also Sec. 583, Griffith's Mississippi Chancery Practice, 2nd Ed. We are of the opinion, therefore, that this contention of the appellant is untenable on this record.

. The appellant further assigns as error the action of the trial court in refusing his request to have the rule invoked as to witnesses. At the beginning of the trial, counsel for the appellant requested that the rule be invoked as to witnesses. Counsel for the appellee stated that he saw no necessity for it. The court responded: ''I think they will tell the truth without it.'' A majority of the jurisdictions follow the early English rule that the exclusion or separation of witnesses, or putting them under the rule as the procedure is termed, is a matter not of right but of discretion on the part of the trial court. A few jurisdictions hold that the exclusion of proposed witnesses from the court room during the examination of other witnesses is a matter of right on proper application. 53 A. Jur., Sec. 31, p. 46. We think, however, that ▇▇ ▇▇ the better rule and the one most conducive to justice and the ascertainment of truth is to grant as a matter of right the request of a party litigant to have the witnesses put under the rule. We think, therefore, that such request of the appellant in this case should have been granted and that it was error for the trial court to refuse it. We can conceive of cases where the refusal of the trial court to grant this request might gravely thwart the ascertainment of truth and prove prejudicial to the party making the request. However, it does not affirmatively appear from the whole record that the decree of the court below has resulted in a miscarriage of justice, and, therefore, under Rule 11 of this Court, we hold that the error of the trial court in refusing the request does not consti-

tute reversible error. We deal with the question, however, only as presented on this record and without reference to those cases where the trial court in the exercise of its sound discretion permits a witness to testify notwithstanding the fact that he was placed under the rule but failed to observe the rule.

In view of the conclusions hereinbefore reached, we are of the opinion that the decree of the court below was correct and it is accordingly affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.