405 So.2d 111 (1981)
CITY OF OXFORD
v.
Maurice INMAN, et al.
No. 52881.
Supreme Court of Mississippi.
October 14, 1981.
McCormick & Morris, Jack McCormick, Oxford, for appellant.
Jeptha C. Clemens, E. Clifton Hodge, Jr., University, for appellees.
Before PATTERSON, C.J., and SUGG and HAWKINS, JJ.
*112 PATTERSON, Chief Justice, for the Court:
The City of Oxford and the Anchorage Co., Inc., appeal from a judgment of the Circuit Court of Lafayette County wherein a rezoning ordinance adopted by the City of Oxford was reversed and rendered null and void for lack of sufficient evidence to justify reclassification. Both the City and Anchorage appeal, contending the trial court committed reversible error in holding that the successful applicants for rezoning failed to sustain their burden of proof; in declaring the city ordinance null and void on the grounds the rezoning was not supported by clear and convincing evidence; and in failing to dismiss the bill of exceptions because it was untimely filed. Appellants also assert the decision below should be reversed because it is a groundless usurpation of the legislative function of the governing body of a municipal corporation; and the decision is arbitrary, capricious and manifestly contrary to reason and the great weight of the evidence.
Anchorage sought to rezone 8.33 acres in the City of Oxford from A, agricultural, to R-C, multi-family residential. The property is located on the west side of Molly Barr Road between Kendall Ditch on the south and the balance of Anchorage property on the south. At the rezoning hearing, Ben Smith, Director of Planning and Development for the City of Oxford, described the changes which allegedly justified the rezoning. These changes included the rebuilding and extension of the Molly Barr Road in 1972 or 1973, the building of a low-rent housing project known as C.B. Webb Apartments, the building of a 25,000 to 30,000 foot recreational center at the junction of Price Street and Molly Barr Road, and construction of a major street across the subject property. Protestants of the rezoning live in the Garner Heights Subdivision which is adjacent to the 8.33 acres.
Concerning the need for multi-family housing on a specific 8.33 acres sought to be rezoned, Smith stated:
I have no information relating to any specific site as to whether it might or *113 might not be used or if there is a need for a development on any specific site. Every year in our program we do a survey, gathering information regarding housing needs within the City.
I believe our last survey done sometime last year does show some need for additional multi-family housing, but I couldn't give you the figures. It's not related to any specific site or any specific type of housing. It would generally be for the whole City, not one area.
He also stated there was some land zoned R-C in the city that is vacant.
Other observations he made about the changed character of the area were as follows:
Yes, I will say the changes of one-lane gravel road down along the property to a 48-foot curb and gutter stripping would be probably the most significant change that actually involved this actual property. As far as the right-of-way of that road is concerned. Of course, the adjoining property across the street, the C.B. Webb Apartments, but immediately adjacent to and within 60 feet, 80 feet, wherever the right-of-way is, would be a change in the character of the neighborhood. This property for years down here has been a farm. It was a farm. I don't know whether they raised cotton or what, for years laid vacant.
We have seen municiple [sic] improvements, several million dollars spent in this area immediately adjacent to the property.
Immediately following the hearing on May 6, 1980, the Mayor and Board of Aldermen voted to rezone the 8.33 acres from A to R-C. Thereafter on June 3, 1980, City Ordinance No. 1980-2 was adopted. Following this adoption on June 13, 1980, Maurice Inman and other protestants filed a bill of exceptions pursuant to MCA § 11-51-75 (1972). Anchorage moved to dismiss the bill of exceptions for failure to appeal within the ten day time period prescribed by the foregoing statute.
Appellants contend there was ample evidence to justify rezoning from agricultural to multi-family residential and further maintain the clear and convincing burden of proof generally applied in rezoning cases does not apply to the present case because the agricultural designation was not intended to be permanent; therefore, the presumption in favor of the original zoning should not be applicable. Assuming, but not deciding, this argument to be valid, we are of the opinion the trial court was correct in holding the evidence insufficient to warrant rezoning because appellants did not prove changed conditions in the area and public need for the rezoning on the specific 8.33 acres sought to be rezoned. In Cloverleaf Mall Ltd. v. Conerly, 387 So.2d 736, 740 (Miss. 1980), we stated the general requirements for rezoning to be:
Before reviewing the evidence in this case, we restate the requirements set forth in our cases which must be met by one seeking rezoning of property. The courts presume that comprehensive zoning ordinances adopted by municipal authorities are well planned and designed to be permanent. Before property is reclassified from one zone to another, there must be proof either, (1) that there was a mistake in the original zoning or, (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning. [Citations omitted].
Furthermore, an applicant seeking rezoning must prove by clear and convincing evidence either (1) or (2) above. Sullivan v. City of Bay St. Louis, 375 So.2d 1200 (Miss. 1979); Underwood v. City of Jackson, 300 So.2d 442 (Miss. 1974); Hinds County Board of Supervisors v. Covington, 285 So.2d 143 (Miss. 1973).
It is also well established that the use of property in accordance with an original zoning plan is not a material change of conditions which authorizes rezoning. Jitney Jungle, Inc. v. City of Brookhaven, 311 So.2d 652 (Miss. 1975); Martinson v. City of Jackson, 215 So.2d 414 (Miss. 1968). [Emphasis added].
We are of the opinion appellants failed to prove by clear and convincing evidence or *114 even by a lesser standard that the conditions had materially changed to warrant rezoning. We think the building of the C.B. Webb low-rent housing and recreational facility as well as road expansion were changes in accordance with the original zoning plan. Also there was no concrete evidence of public need for housing on the 8.33 acres sought to be rezoned, but testimony there was generally a public need for multi-family dwellings in the City of Oxford. We are of the opinion this is too vague to warrant a change in zoning. Therefore, the trial court did not err in this regard.
We are further of the opinion the lower court did not usurp the municipality's legislative functions in reversing the City's rezoning ordinance. It is clearly within the judicial discretion on review to reverse a rezoning ordinance adopted on insufficient proof. Here, we believe the City of Oxford's adoption of the rezoning ordinance was based upon less than clear and convincing evidence. In Sullivan v. City of Bay St. Louis, 375 So.2d 1200, 1201 (Miss. 1979), wherein we reversed the lower court's affirmance of a rezoning order because of insufficient evidence, we stated as follows:
The burden of proof was upon appellees to show that the character of the neighborhood had changed to such an extent that it justified rezoning and that there was a public need for rezoning the property. Unless the evidence is clear and convincing as to those requirements, the action of a rezoning board has been held to be arbitrary, capricious and discriminatory. [Citations omitted].
We also observed in Sullivan, supra at 1202, that a reviewing court "will not disturb a finding of the City that conditions have changed so as to warrant rezoning if the question is fairly debatable." We are of the opinion the question was not fairly debatable in this case; in fact, very little evidence was presented to show a material change of conditions and public need. Thus we think the lower court acted properly in its review and did not usurp the City of Oxford's legislative function.
Turning to the final assignment of error, appellants assert the protestants' bill of exceptions was not timely filed and should have been dismissed by the lower court. The applicable statute, MCA § 11-51-75 (1972) provides in pertinent part the following:
Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities... .
Appellants submit the ten day appeal period commenced running on May 6, 1980, the date the Mayor and Board of Aldermen voted orally to reclassify the property, whereas it is appellees' position the ten day period began running on June 3, 1980, the date the written ordinance was signed and adopted.
We are of the opinion the filing of the bill of exceptions on June 13, 1980, was timely because the rezoning ordinance did not become effective until written, signed, and formally adopted on June 3, 1980. The statutory provision for the effective date of an ordinance is found in MCA § 21-13-11 (Supp. 1981) which states:

Every ordinance passed by the governing body of a municipality, except as is otherwise provided by law, shall be certified by a municipal clerk, signed by the mayor or a majority of all the members of the governing body, recorded in the ordinance book, and published at least one (1) time in some newspaper published in such municipality, or, if there be no such newspaper, then in a newspaper within the county having general circulation in said municipality, or, if there be no newspaper published in or having general circulation in same, then in any newspaper published in the State of Mississippi having general circulation in said county; and all of same shall be done *115 before such ordinance shall be effective. No ordinance shall be in force for one (1) month after its passage; however, any ordinance for the immediate and temporary preservation of the public peace, health or safety or for other good cause, which is adopted by unanimous vote of all members of the governing body, may be made effective from and after its passage by a unanimous vote of all members of the governing body. However, in such cases, such ordinance shall contain a statement of reason why it is necessary that same become immediately effective. All such ordinances shall be published and recorded in the ordinance book in the same manner as other ordinances, but shall become effective immediately upon the adoption thereof, and prior to being so recorded and published. Nothing in this section shall apply to ordinances appropriating money for the payment of the current expenses of the municipality or the payment of sums due on any contract previously made. [Emphasis added].
Therefore, we are of the opinion the bill of exceptions was filed within the statutory ten day time period.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.