509 So.2d 877 (1987)
BOARD OF ALDERMEN, CITY OF CLINTON, Mississippi, and Clinton East, Inc.
v.
James E. CONERLY, et al.
No. 56513.
Supreme Court of Mississippi.
May 20, 1987.
*878 John H. Fox, III, Fox & Watson, Jerry L. Mills, Pyle, Dreher, Mills & Woods, Jackson, for appellants.
William E. Spell, Sr., Sullivan, Hunt, Spell & Henson, Clinton, for appellees.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
This case is on appeal by the City of Clinton and Clinton East, Inc., a corporate realty developer, from a judgment of the circuit court of the First Judicial District of Hinds County reversing and vacating an amendment to the municipality's zoning ordinance. The trial judge ruled that, under our standard of review of zoning amendments, there was insufficient evidence to support the reclassification of the subject property from R-1 to R-2 residential. We find the circuit judge applied the appropriate standard, was correct in his analysis, and we affirm.

FACTS
The City of Clinton in Hinds County has a population of approximately 15,000, and is the home of Mississippi College.
The eastern corporate boundary of Clinton and the western corporate boundary of the City of Jackson coincide on Shaw Road. The property involved is in the central part of the east side of Clinton. It consists of 18.66 acres out of a parcel of land of approximately 45 acres, which is vacant. It is designated as part Part V of Easthaven Subdivision, and is an irregular shaped tract. The southern line of Part V, approximately 600 feet long, is the northern boundary of Hunter Oaks Apartments, an area zoned R-3. The eastern and northern boundaries of Part V is vacant land, which in turn fronts on its east side on Shaw Road. On the western side of Part V are the remaining parts of Easthaven Subdivision and the East Side Elementary School.
Part V was zoned R-1 residential, and the entire area surrounding (with the exception of its southern line) was zoned R-1 residential.
Highway 80 is located 410 feet south of the entire Easthaven Subdivision, and along this 410 feet wide space between Southwood Subdivision and Highway 80, part is zoned commercial and part R-3 residential. The area of the City of Jackson just to the east of Shaw Road is also vacant land, but is zoned industrial.
An accurate map or plat of the entire area would be helpful as an appendix, but no such map was made a part of the record.
On July 3, 1984, Edward F. McDonald, president of Clinton East, Inc., a developer of the Easthaven Subdivision, wrote the Mayor and Board of Aldermen requesting that Part V be rezoned from R-1 to R-2 as provided in Section 2007 of the Zoning Ordinance of the City of Clinton. The letter stated:
The purpose of this request is to enable us to develop said property for the construction of duplex townhouses. These would be of designs that would blend in well with the community.[1]
With this letter Clinton East sent a description and a plat of the property proposed to be rezoned.
A public notice of a special meeting of the Clinton Planning and Zoning Commission was published and the special meeting was held August 9, 1984.
*879 At this meeting McDonald appeared together with opponents of the proposal. The minutes reflect the following:
McDonald addressed the Commission and audience and distributed photos of the type of two-story duplexes that might be built on the subject property. He said that because of the current economy and bonding mechanisms available to prospective homeowners, the developers feel the market has changed significantly and rather than build smaller, single family homes, they propose to build duplexes that look like big houses, similar to those located in the Village Square area off Canton Mart Rd. in Jackson. He said the duplexes would have 2,200 to 3,000 square feet per building.
These minutes also reflect that McDonald was requesting the rezoning under Section 2007(b) of the Clinton Zoning Ordinance.
The Zoning Commission approved the proposal. Numerous citizens of Clinton then petitioned the Clinton Planning Commission and the Board of Aldermen asking them to refuse to rezone any of this area to R-2.
On August 21, 1984, there was a recessed meeting of the Mayor and Board of Aldermen of Clinton. The minutes reflect that there was an hour and 50 minutes' discussion about the proposed change in zoning from R-1 to R-2 following which, on a vote of 6-to-2, the Board voted to deny the zoning change. The minutes also reflect that the matter was referred to the Planning and Zoning Commission for further study and recommendation to the Board.
On August 23, 1984, the Clinton Planning Commission met again. Its second order of business was to review McDonald's petition to rezone this area. Several citizens spoke in opposition to the proposed plan and presented a petition opposing the plan. The petition included seven pages of signatures. Following this Alderman Dickie King asked each Commission member to express his or her reason for previously recommending the changing of the zoning in the area. The minutes reflect the following:
The Commission members advised Alderman King and the Easthaven residents their decision was based on changing development patterns resulting from economic conditions, etc., and the rezoning would serve as a buffer zone between the existing R-1 area and Shaw Road.
Following this the Commission voted to rezone the area from R-1 to R-2.
The Mayor and Board of Aldermen of Clinton held a recessed meeting on August 28, 1984, at which time this zoning matter came before the Board. The minutes show that the Clinton Planning and Zoning Commission had unanimously recommended that the proposed change be approved. An alderman moved to go into executive session to further discuss the matter and the legalities involved. The motion was seconded and the Board went into executive session. The minutes reflect the following transpired when the Board returned from executive session:
After all interested parties involved in the said zoning matter were given an opportunity to speak on said matter, Larry Smith, Chairman of the Clinton Planning and Zoning Commission, presented the Board with recommendations from the Planning Commission. Mr. Smith proposed that the following motion be made concerning said zoning proposed change:
1. That a Site Plan be submitted for review by the Planning Commission for recommendations to the Mayor and Board prior to any construction.
2. That the Developer, Mr. Ed McDonald, adhere to the Subdivision Plat originally submitted for Part 5 with the exception for five (5) lots shown at the end of a cul-de-sac designated as Street "C" on the original Plat.
3. That no Building Permits be issued for the construction of individual townhouses unless the Site Plan provides for parking in the rear of those townhouses.
4. Restricted covenants be submitted with the Plat of Easthaven Part V.
This motion carried.
The Mayor of Clinton vetoed this action by a veto message dated September 14, 1984, giving his reasons as follows:

*880 (1) The board action was taken on the basis of a verbal report from an alderman who had attended the meeting of the Planning Commission, at which time the recommendation to approve the request to rezone was made. There was no written report from the Planning commission nor was the matter on the Agenda for the Board of Aldermen's meeting.
(2) The board action was a response to a temporary change in market conditions for single family dwellings, but the board's action will result in a permanent change in the character by the development of Part V of the Easthaven Subdivision under R-2 zoning.
(3) The board action was inconsistent with past board actions in upholding existing zoning in the areas adjacent to the Easthaven Subdivision. In two earlier zoning questions in recent months, the board voted to maintain existing zoning to protect the property rights and interests of the owner of the property being considered for rezoning. In the above actions, the board voted to change the zoning of the property at the risk of diminishing property values of owners of property adjacent to the area under consideration for re-zoning.
Thereafter a special meeting of the Mayor and Board was held on September 17, 1984, at which time the minutes reflect the Board of Aldermen, by a 5-to-1 vote, voted to override the Mayor's veto. The only information contained in the minutes is the motion to override the Mayor's veto and the fact that it carried by a 5-to-1 vote.
On October 2, 1984, the Mayor and Board of Aldermen held a regular meeting, at which time the city attorney advised the Board that certain procedural steps were necessary before the board could amend the zoning ordinance. The attorney told the Board that it was necessary for the proposed amendment to be reduced to writing, published one time and read publicly prior to its adoption. The city attorney requested the Mayor and the Board to delay the action until the proper notices were given, and the proposed ordinance was reduced to writing and was read publicly. This discussion took place while the Board was in executive session.
The City Planning and Zoning Commission held a special meeting on October 8, 1984, at which time McDonald provided the Commission with copies of proposed protective covenants which had been drafted for the Part V area. The chairman also advised the Commission that there was litigation underway about this rezoning as proposed, and he passed out copies of a letter received by the city attorney from McDonald's attorney which requested "input" from the Commission on a draft of a rezoning ordinance to be approved by the Mayor and Board on October 23. The minutes reflect several suggestions were made (although the content of these suggestions is not in the record) and that these would be submitted to McDonald's attorney.
On October 12, 1984, the attorney for McDonald wrote the city attorney enclosing a proposed rezoning ordinance.
The Mayor and Board of Aldermen held a recessed meeting on October 23, 1984, at which time the proposed zoning ordinance was passed. The opponents, represented by attorney William E. Spell of Clinton, brought a court reporter who recorded and transcribed the proceedings, and made them a part of this record. James A. Peden, a Jackson attorney, represented McDonald at this meeting. The Mayor presided and limited each side to a 15-minute presentation. The city attorney advised everyone present that the proposed ordinance had been drafted by the attorney for the applicant and contained findings of fact which must be considered by the Mayor and Board. The city attorney stated the following:
They (the Mayor and Board) will, at the time the proposed ordinance is read, have to make a determination as to whether the applicant, both tonight and at previous hearings on this matter, has met the burden of proving each and every element of fact contained in the ordinance as drafted by the attorney for the applicant.
Thereupon, Peden, attorney for the applicant, made a statement in support of the *881 proposed change. He stated that his client wished to rezone from Low Density Residential District, R-1, to a classification of Medium Density Residential District, R-2 in order to construct luxury, two-story townhouse duplexes. He recited the July 3, 1984, meeting of the Planning Commission, the August 21 meeting of the Mayor and Board, the August 23 meeting of the Planning Commission and informed the Mayor and Board that the August 28 approval was not legally effective because it was not passed by a formal ordinance. He further stated the Board had acknowledged this and on October 2 they had given a public notice to meet on October 23. He said that procedurally, the Mayor and Board had a recommendation from the Planning Commission, which was confirmed by the chairman of the Commission. Peden then described the proposed houses to be built, and indicated that they would sell for prices ranging from about $62,000 to about $80,000 per unit.
Peden stated that in accordance with decisions of this Court his clients believed they had met the test of a public need and had also shown a change in circumstances in the neighborhood. He stated that unquestionably there was a need in the City of Clinton for additional R-2 zoning, and for additional quality duplexes. He added that to build traditional single family residential homes, which were commonly built ten or fifteen years ago, an owner had to pay $75,000 to $90,000 or $100,000, and if municipalities were to provide quality housing they needed to make more intensive use of land.
As to a change, he stated there had been substantial growth and change in the eastern part of Clinton in recent years. As examples he cited Eastwood Townhomes, a rezoning on Vicksburg Road, that townhouses had been constructed in Lindale Subdivision, and that the Morrison Heights Shopping Center had been developed on Clinton Boulevard. He also pointed out that in other areas multi-family units were being constructed.
Finally he argued that the proposed rezoning would create a buffer zone, or a transitional zone between the existing single family residential areas and Hunter Arms to the south and the Eastwood Townhouses, in a C-1 area, to the north of the subject property.
Peden concluded with the following statement:
So, in summation, we believe that we have shown that there is a public need in Clinton for additional R-2 zoning for quality townhouses. We believe we've shown that there is change, or there has been change in this area. We believe we've shown that it would be sound urban planning to rezone to provide the buffer zone that I mentioned just a moment ago. The Planning Commission, your profession staff, has unanimously recommended approval of this application. So, now we simply ask the Board to adopt a formal ordinance of rezoning, consistent with its previously expressed intent. We ask the Board to rezone the subject property to a classification of Medium Density Residential R-2. Thank you, Mayor. [Emphasis added]
Following this, Spell, representing the opponents introduced into the record the affidavit of Sid Spiro, to which was attached a copy of a zoning map of the City of Clinton.[2] Also introduced into the record was a report that was read by Morris Williams, realtor and appraiser, in opposition to the rezoning. Also introduced were the affidavits of twenty-four homeowners in the area objecting to the rezoning and stating that there had been no change in the area since the initial zoning ordinance was adopted, except that more single family residences houses had been constructed in the area.
The affidavit of Spiro stated that he had personally investigated the available areas already zoned to accommodate duplex homes and had found that there was land available within the City of Clinton already zoned for duplex homes and that this area *882 substantially exceeded the size of the area to be rezoned in this application.
Williams' report stated that Clinton East was attempting to inject duplex apartments into the very heart of an "extremely nice residential subdivision." In his opinion the rezoning would change the entire character of the neighborhood, and thereby destroy the single family concept that prevailed in the subdivision. He believed that it would cause a reduction in the value of the single family homeowner's property and bring about an economic loss to them. Following the presentation of these affidavits and documents, Spell told the Board that his clients had been presented with the proposed finding of fact of the zoning ordinance only at the beginning of the hearing and that they had not had an opportunity to review them. He stated there was no evidence before the Board of any change in the area. He said all the Board had was the statement made by Peden, the attorney, relating to a public need. He argued that the proponents of the zoning change must prove by clear and convincing evidence that there is a need for the change and that there had been a material change in the neighborhood  not the city. He argued there was no evidence before the Board which would show there had been any change in the neighborhood. He further stated that the records available to the Board would show that Clinton East already had ample property zoned for the classification that would serve their purpose in building these townhouses.
Upon a motion, to which the opponent objected, the Mayor and Board directed that all previous meetings be made a part of the record.
The city attorney advised the Board that they could use their own personal knowledge in making their decision.
Spell requested that the personal knowledge the Board members were relying upon be inserted into the record evidence and stating the following:
That's correct, Your Honor, and I have no objection to your relying on your personal knowledge, provided the record reflects what your personal knowledge is. We have the duty, when we go forward on an appeal, to show  we must, the burden of proof is so great upon those who lose this issue. What you do here is going to be presumed by the Courts to be correct. We will have the burden of showing that what you did was either arbitrary, capricious, or without substantial evidence. And unless the evidence is there, upon which you base your opinion, the record is not complete. And it's a very important point, and I think it is probably, at this point in the discussion, I would think that it might very well control whether or not the Court affirms or denies the actions of the Board, if, in fact, the Board approves this ordinance. But we have no objection to the evidence being included in the record, provided it is included in the record under circumstances that gives us the opportunity to examine it and to present evidence in opposition to that evidence or contrary to that evidence, that would support our position. We simply think that the record should be complete, so that when it gets to the Court, wherever that might be, that the Court will understand on what evidence you reached your judgment, so that a decision can then be made by the Court as to whether your judgment was arbitrary, capricious or without substantial evidence.
(R.168-169)
Following further discussion about the proposed rezoning, the ordinance was adopted. The ordinance made the following factual findings:
(2) There is a public need in the City of Clinton for additional land to be placed in the Medium Density Residential District (R-2). There is a public need for the duplex townhouses proposed by the applicant for the subject property, as described below.
(3) The proposed rezoning will create a transitional or buffer zone between the existing Low Density Residential District (R-1) in the Easthaven and Shaw Road, which is now considered to be a major transportation artery. Shaw Road is not *883 compatible with a low density residential environment.
(R.179)
The ordinance went on to find that there had been a substantial growth and change in the east Clinton area in recent years and the proposed rezoning was necessary because of changing conditions and new development patterns in the City of Clinton. It also found the rezoning would not adversely affect the neighborhood, but would serve the public interest of the City of Clinton and its people, and suitably promote the public health safety and welfare more than existing zoning classification on the subject property.
Following the adoption of this ordinance, the opponents appealed to the circuit court. The circuit court reversed and vacated the amendment, and the city and Clinton East have appealed.

LAW
Miss. Code Ann. §§ 17-1-15 and -17 are the statutory authority for establishing as well as amending zoning ordinances. While these statutes make no requirement either as to the evidence necessary or which party has the burden of proof on a proposed change in zoning, this Court in decisions over the years has clearly delineated guidelines for the governing boards of municipalities and counties in their decisions to approve or reject proposed amendments to zoning ordinances. We recapitulate them here. Any governing board which fails to adhere to these guidelines does so at its peril.
In W.L. Holcomb v. City of Clarksdale, 217 Miss. 892, 65 So.2d 281 (1953), we announced the following principle:
All presumptions must be indulged in favor of the validity of a zoning ordinance if it is within the legislative power of the city. Such an ordinance is presumed to be reasonable and for the public good. The presumption of reasonableness must be applied to the facts of the particular case, and it applies to rezoning as well as to the original zoning regulation, but not with the same weight, the presumption being that the zones are well planned and arranged to be more or less permanent, subject to change only to meet a genuine change in conditions. [Emphasis added]
Id., 65 So.2d at 284. See also: Lewis v. City of Jackson, 184 So.2d 384, 387-88 (Miss. 1966).
Then, in Martinson v. City of Jackson, 215 So.2d 414 (Miss. 1968), we emphasized the principle in the following statement: "The courts presume that the original zoning is well planned and designed to be permanent." Id. at 417. This precise principle has been restated by this Court in the following cases; Mayor and Comm'rs v. Wheatley Place, Inc., 468 So.2d 81, 83 (Miss. 1985); City of New Albany v. Ray, 417 So.2d 550, 552 (Miss. 1982); City of Oxford v. Inman, 405 So.2d 111, 113 (Miss. 1981); Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736 (Miss. 1980); Watts v. City of Wiggins, 376 So.2d 1072, 1073 (Miss. 1979); and Sullivan v. City of Bay St. Louis, 375 So.2d 1200, 1201 (Miss. 1979).
Accordingly, we have held it a firmly established rule that before a zoning board reclassifies property from one zone to another, there must be proof either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification, and that there was a public need for rezoning.[3]
*884 The burden of proof to support the requested change is upon the applicant.[4]
Moreover, the requirements for reclassification must be shown by clear and convincing evidence.[5]
When we have before us an appeal from an action by a governing board rezoning property, unless the record contains specific finding by such board that one or both these two criteria have been met, and in addition thereto sufficient evidence to support such finding, we will inevitably conclude that the governing board acted arbitrarily, unreasonably and capriciously.
Thus, in Lewis v. City of Jackson, supra, at 387, we stated:
The evidence does not show, and the Council did not find, that conditions had changed in this community which would make it in the best interest of the City to rezone this property. Under these circumstances, the rezoning from residential to commercial is unreasonable, arbitrary and capricious.
And, in Martinson v. City of Jackson, supra, at 417-18, we noted:
In the instant case there was no evidence to show that the original zoning was erroneous. Likewise, the evidence failed to establish that since the adoption of the zoning map there had been any such change in the character of the neighborhood as to justify a reclassification.
* * * * * *
There being no proof of mistake, change, or confiscation, we are unable to find any support for the Council's action in rezoning. The case is therefore reversed, and the petitions for change of classification are denied and dismissed.
In Harris v. City of Jackson, supra, at 344, where the appellee applicants failed to meet this burden of proof, we reversed and rendered. See also: Smith v. City of Gulfport, 269 So.2d 345 (Miss. 1972) (reversing and rendering rezoning amendment); Miller v. City of Jackson, 277 So.2d 622 (Miss. 1973); and Underwood v. City of Jackson, supra (reversing and rendering because the applicant had failed to meet this burden); Jitney-Jungle, Inc. v. City of Jackson, supra (reversing and rendering rezoning order).
In Sullivan v. City of Bay St. Louis, supra, we held the burden was upon the applicant and city approving rezoning to show a mistake or change, and stated, p. 1201:
The burden of proof was upon appellees to show that the character of the neighborhood had changed to such an extent that it justified rezoning and that there was a public need for rezoning the property. Unless the evidence is clear and convincing as to those requirements, the action of a rezoning board has been held to be arbitrary, capricious and discriminatory.
See also, Cloverleaf Mall, Ltd. v. Conerly, supra, at 741 (affirming judgment of circuit court vacating rezoning ordinance because the applicants failed to meet this burden of proof).
In City of Oxford v. Inman, supra, pp. 113-14, we observed:
[W]e are of the opinion the trial court was correct in holding the evidence insufficient to warrant rezoning because appellants *885 did not prove changed conditions in the area and public need for the rezoning... .
* * * * * *
We are of the opinion appellants failed to prove by clear and convincing evidence or even by a lesser standard that the conditions had materially changed to warrant rezoning.
* * * * * *
We are further of the opinion the lower court did not usurp the municipality's legislative functions in reversing the City's rezoning ordinance. It is clearly within the judicial discretion on review to reverse a rezoning ordinance adopted on insufficient proof. Here, we believe the City of Oxford's adoption of the rezoning ordinance was based upon less than clear and convincing evidence.
Just as significant, in reviewing a record which showed the applicant had proven by clear and convincing evidence the essentials for rezoning, and the record contained no substantial evidence to the contrary, we have held that a denial by the city of a proposed rezoning was arbitrary, capricious and unreasonable. Bridges v. City of Jackson, supra.
We have recognized that informality attends rezoning proceedings, and governing board members may take into consideration their personal knowledge and familiarity with their community (as indeed it would be well nigh impossible in reality to ignore), Board of Aldermen of Bay Springs v. Jenkins, supra, at 1327, this by no means suggests that, in order to justify rezoning, a board need not find the necessary criteria for rezoning by clear and convincing evidence and that it is not necessary that such evidence appear in the record. Woodland Hills Cons. Ass'n. v. City of Jackson, supra, at 1181, n. 8.
Neither do we depart from our oftquoted statement that all matters by the local governing board pertaining to zoning are legislative in nature, and an appellate court is not the zoning board. This Court is not at liberty to disturb a local community's zoning decision which was fairly debatable. Woodland Hills Cons. Ass'n. v. City of Jackson, supra, at 1180; City of New Albany v. Ray, supra; Bell v. City of Canton, 412 So.2d 1179, 1180 (Miss. 1982); Coleman v. Southwood Realty Co, 271 So.2d 742 (Miss. 1973); and Sanderson v. City of Hattiesburg, 249 Miss. 656, 163 So.2d 739 (1964).
Likewise, a decision by the local governing board upon appeal is presumed valid, and the burden is upon the person seeking to set it aside to show that it was arbitrary, capricious and unreasonable.
It will be demonstrably shown on appeal, however, that the action of the governing board was indeed arbitrary, capricious and unreasonable if there is lacking in the record clear and convincing evidence either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification, and that there was a public need for rezoning.
In Mayor and Comm'rs v. Wheatley Place, Inc., supra, at 83, we stated:
It should be borne in mind, however, that while a duly enacted comprehensive zoning ordinance is not a true protective covenants agreement, it bears some analogy.
Purchasers of small tracts of land invest a substantial portion of their entire lifetime earnings, relying upon a zoning ordinance. Without the assurance of the zoning ordinance, such investments would not be made. On this small area they build their homes, where they expect to spend the most peaceful, restful and enjoyable hours of the day.
Zoning ordinances curb the exodus of city workers to a lot in the distant countryside. Indeed, the protection of zoning ordinances in municipalities, as opposed to no zoning in most county areas, encourage the choice of a city lot rather than a country lot for a home in the first instance. Zoning ordinances make city property more attractive to the prudent investor.
In the absence of agreement between all interested parties, an amendment to a *886 zoning ordinance is not meant to be easy. Otherwise, it would be a meaningless scrap of paper.
It is for precisely this reason that, while this Court accords profound deference to actions of governing boards pertaining to their local affairs, we have nevertheless carefully delineated rules for them to follow before amending their duly adopted and established zoning ordinances. The amendment of a zoning ordinance will never be simply a matter of local politics as long as this Court sits.
This case presents a striking illustration of a local board ignoring the guiding precepts we have set forth in numerous decisions, and the raison d'etre for the rules we have enunciated. Neither the applicant nor the city produced any evidence in this record to support an amendment to the city's zoning ordinance. There was a carefully drafted ordinance reciting all the necessary requirements had been met, but no proof to support it.
When a local governing board is presented a request to reclassify property from one zone to another, if there has been a change in the neighborhood and if there is a public need therefor, evidence to support it should not be difficult to produce. To support on appeal a reclassification of zones, the record at a minimum should contain a map showing the circumstances of the area, the changes in the neighborhood, statistics showing a public need, and such further matters of proof so that a rational, informed judgment may be formed as to what the governing board considered. When there is no such proof in the record we must conclude there was neither change nor public need.
While not necessary to our decision, what has transpired since the circuit court judgment is a clear illustration how politics can affect rezoning decisions and the necessity for clear, court-enforceable guidelines. Following the appeal of this case to this Court, Clinton filed its motion to dismiss the appeal. The basis of this motion is that there has been an election in the City of Clinton and a majority of the present governing board wished to re-classify the property to R-1 residential, precisely as it was before the amendment. In view of our disposition of this case, there is no need to address this motion.
The circuit judge was well within the law in reversing the order of the city in amending its rezoning ordinance, and the judgment of the circuit court is affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] It was originally contemplated by McDonald that more land than Part V should be rezoned R-2, but the application was later reduced to 18.66 acres, which apparently is Part V of the Easthaven Subdivision.
[2] It is from this zoning map that this Court has been able to describe the property involved.
[3] Martinson v. City of Jackson, supra; Underwood v. City of Jackson, 300 So.2d 442 (Miss. 1974). Our cases requiring that in addition to showing that there has been a change in the neighborhood it also be shown there is a public need are: Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 503 (Miss. 1986); City of Jackson v. Aldridge, 487 So.2d 1345, 1346 (Miss. 1986); Northwest Builders, Inc. v. Moore, 475 So.2d 153, 155-56 (Miss. 1985); Mayor and Comm'rs v. Wheatley Place, Inc., supra, at 83; Woodland Hills Cons. Ass'n. v. City of Jackson, 443 So.2d 1187, 1189 (Miss. 1983); Bridges v. City of Jackson, 443 So.2d 1187, 1189 (Miss. 1983); Bd. of Aldermen of Bay Springs v. Jenkins, 423 So.2d 1323, 1328 (Miss. 1983); City of New Albany v. Ray, supra; City of Oxford v. Inman, supra; Cloverleaf Mall, Ltd. v. Conerly, supra; Watts v. City of Wiggins, supra; Jitney-Jungle, Inc. v. City of Jackson, 311 So.2d 652 (Miss. 1975).
[4] Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 503 (Miss. 1986); City of Jackson v. Aldridge, 487 So.2d 1345, 1346 (Miss. 1986); Mayor and Comm'rs v. Wheatley Place, Inc., supra, at 83; Bridges v. City of Jackson, 443 So.2d 1187, 1189 (Miss. 1983); City of Oxford v. Inman, supra; Cloverleaf Mall, Ltd v. Conerly, supra; Watts v. City of Wiggins, supra; Sullivan v. City of Bay St. Louis, supra; Jitney-Jungle, Inc. v. City of Jackson, 311 So.2d 652 (Miss. 1975); Underwood v. City of Jackson, 300 So.2d 442, 443 (Miss. 1974); Harris v. City of Jackson, 268 So.2d 342, 343 (Miss. 1972); Sanderson v. City of Hattiesburg, 249 Miss. 656, 163 So.2d 739, 741 (1964); City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660, 664 (1962); and Holcomb v. City of Clarksdale, supra.
[5] Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 503 (Miss. 1986); City of Jackson v. Aldridge, 487 So.2d 1345, 1346 (Miss. 1986); Mayor and Comm'rs v. Wheatley Place, Inc., supra, at 83; Bridges v. City of Jackson, 443 So.2d 1187, 1189 (Miss. 1983); City of New Albany v. Ray, supra; City of Oxford v. Inman, supra, at 113; Cloverleaf Mall, Ltd. v. Conerly, supra, at 740; Sullivan v. City of Bay St. Louis, supra, at 1201.