*280 WALLER, Chief Justice,
Dissenting.
¶40. Because I respectfully disagree with the majority that there is any evidence of a change in the character of the neighborhood to be rezoned, I respectfully dissent.
¶ 41. Zoning laws were first enacted in Mississippi in 1924. See 195 Miss. Laws (1924). Issues of rezoning were first addressed by this Court in the 1950s in W.L. Holcomb, Inc. v. City of Clarksdale, 217 Miss. 892, 65 So.2d 281 (1953). In that case, the Court recognized that the zoning statutes did not offer guidance as to the various burdens of proof or what facts should be considered when rezoning property. Beginning with Holcomb, this Court set out the legal requirements for rezoning and by 1968, those requirements were firmly and unquestionably established:
Accordingly it is a firmly established rule that before a zoning board reclassifies property from one zone to another, there should be proof either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification.
Martinson v. City of Jackson, 215 So.2d 414 (Miss.1968).
¶ 42. This has remained the legal standard until the present day. See Childs v. Hancock County Bd. of Supervisors, 1 So.3d 855, 859-60 (Miss.2009); Bridge v. Mayor and Bd. of Aldermen, City of Oxford, 995 So.2d 81, 83 (Miss.2008); Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1224 (Miss.2000); McWaters v. City of Biloxi, 591 So.2d 824, 827 (Miss.1991); Bd. of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 883 (Miss.1987); Mayor and Comm’rs of Jackson v. Wheatley Place, Inc., 468 So.2d 81, 83 (Miss.1985); and Oxford, v. Inman, 405 So.2d 111, 113 (Miss.1981).
¶ 43. The burden of proof rests upon the party seeking to rezone property. That party must show by clear and convincing evidence that an error in zoning has occurred, or that there has been a substantial change in the character of the neighborhood, with a concomitant public need for rezoning. Cloverleaf Mall, 387 So.2d at 740. See also Sea Lands, 759 So.2d at 1224; Wheatley Place, 468 So.2d at 83; and Inman, 405 So.2d at 113.
¶ 44. Although the vast weight of our precedent deals with challenges to municipal zoning ordinances, the same standard applies to ordinances enacted by county boards of supervisors. See Byram 3 Dev., Inc. v. Hinds County Bd. of Supervisors, 760 So.2d 841 (Miss.App.2000); Faircloth v. Lyles, 592 So.2d 941 (Miss.1991); Nw. Builders, Inc. v. Moore, 475 So.2d 153 (Miss.1985); Bd. of Supervisors of Jackson County v. Roberts, 287 So.2d 436 (Miss.1973); Hinds County Bd. of Supervisors v. Covington, 285 So.2d 143 (Miss.1973); Moore v. Madison County Bd. of Supervisors, 227 So.2d 862 (Miss.1969); Howie v. Autrey, 209 So.2d 904 (Miss.1968); Ridgewood Land Co. v. Simmons, 243 Miss. 236, 137 So.2d 532 (1962). In deciding cases dealing with county rezoning issues, this Court has not hesitated to cite and rely upon caselaw addressing municipal zoning issues, as the cases above show. It is clear that there is no distinction in the legal elements or application of those elements when the zoning authority in question is a county board rather than a municipal authority.
¶ 45. The majority effectively has omitted the requirement that a change occur in the character of the neighborhood to be rezoned before rezoning is permissible. In essence, the majority finds that changes in the overall county are sufficient to satisfy this requirement. This is a complete departure from existing authority.
*281 ¶ 46. This Court consistently has applied the same standard for reviewing whether there has been substantial change in the character of the neighborhood. For purposes of rezoning, “the neighborhood” consists of the specific piece of property sought to be rezoned and its immediate/adjoining surroundings. See Childs, 1 So.3d at 859-60 (conditions changed in and around the area sought to be rezoned); Byram 3 Dev., 760 So.2d at 844 (subject property and immediate area). See also Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221 (Miss.2000) (area proposed to be rezoned and surrounding areas); Fondren N. Renaissance v. Mayor and City Council of Jackson, 749 So.2d 974 (Miss.1999) (area proposed to be rezoned and surrounding area); Jitney-Jungle, Inc. v. City of Brookhaven, 311 So.2d 652 (Miss.1975) (subject property and surrounding properties); Cockrell v. Panola Co. Bd. of Supervisors, 950 So.2d 1086 (Miss.Ct.App.2007) (area to be rezoned and areas surrounding the subject property).
¶ 47. More importantly, this Court has stated on more than one occasion what a neighborhood is not. Changes in the character of the land two miles away from the subject property are not in the subject property’s neighborhood. Wright v. Mayor and Comm’rs of City of Jackson, 421 So.2d 1219, 1223 (Miss.1982). Rezoning for the benefit of the community-at-large does not meet mistake or change rezoning requirements. Sullivan v. Bay St. Louis, 375 So.2d 1200, 1201 (Miss.1979). Changes in character located a half mile from the subject property are not in the neighborhood. Cockrell, 950 So.2d at 1094 (“because this business is approximately one-half mile away from the Martin’s property, and all of the land surrounding the Martin’s is zoned agricultural according to the maps in the record, we do not consider it in the same ‘neighborhood’ as the Martin’s property.”) (emphasis added).
¶48. The majority quotes portions of statements given by the HCDC at both the Planning Commission hearing and Board of Supervisors hearing to support its assertion that there has been a change in the character of the neighborhood. Respectfully, I disagree that the quotations support any such conclusion. Each deals specifically with changes in demographics of the county as a whole that have occurred since Hurricane Katrina and the need for large industrial sites for development.
¶ 49. For purposes of rezoning, the alterations in the county generally are irrelevant considerations. This Court previously has rejected the argument that rezoning to benefit the community-at-large should be permitted. Sullivan, 375 So.2d at 1201. It is questionable whether, under the present circumstances, Saucier would consider itself the same community as Gulfport or Biloxi, even if such a standard were legally permitted. However, the law does not gauge the need of the community; it measures the changes in a given neighborhood, of which there are usually many within any community.
¶ 50. Regardless, this Court has never looked to the county (or the community) as a whole, but specifically and only to the property in question and its surrounding areas to determine whether or not a change in character has occurred. Here, no evidence was given, nor was there any argument to that end. The statements relied upon by the majority speak solely to the general shift to the north of Interstate 10 of people and business, an area which constitutes the vast majority of the county, not merely the Saucier neighborhood.
¶ 51. No evidence of any change in the character of the Saucier neighborhood was offered. The HCDC argued only that there was a need for more industrial space. When specifically asked at oral argument *282 what change in the neighborhood justified rezoning, the HCDC stated the need was the change. With all due respect, this is an impermissible conflation of two separate and distinct requirements and should not be permitted to contravene firmly established legal requirements, particularly where no party to this litigation has asked for' such an exception to be applied.
¶ 52. The need to restrict the change to the immediate property and its surrounding area likely stems from the acknowledgment by this Court of the importance of the significant investment people make in their property, often based upon extant zoning:
Purchasers of small tracts of land invest a substantial portion of their entire lifetime earnings, relying upon a zoning ordinance. Without the assurance of the zoning ordinance, such investments would not be made. On this small area they build their homes, where they expect to spend the most peaceful, restful and enjoyable hours of the day.
Wheatley Place, Inc., 468 So.2d at 83 (“It should also be borne in mind, however, that while a duly enacted comprehensive zoning ordinance is not a true protective covenants agreement, it bears some analogy.”); Sea Lands, 759 So.2d at 1228-29; and Conerly, 509 So.2d at 885-86.
¶ 53. For this reason, the presumption of validity given original zoning decisions is not applied to the same degree in cases of rezoning. Sea Lands, 759 So.2d at 1227; Conerly, 509 So.2d at 883; Sullivan, 375 So.2d at 1201-02; Lewis v. City of Jackson, 184 So.2d 384, 387-88 (Miss.1966).
¶ 54. Since original zoning ordinances are deemed more or less permanent and analogous to protective covenants, this Court presumes original zoning decisions were made thoughtfully and with an eye toward both present and future needs. Sea Lands, 759 So.2d at 1225; Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 503 (Miss.1986). Decisions to change those ordinances shortly after they have been enacted are suspect. Sea Lands, 759 So.2d at 1225. The Saucier zoning ordinances were enacted in 2000, and a mere five years passed between that enactment and the first attempt to change it, an attempt identical to that before us. The HCDC/Fore petition therefore falls squarely within the suspect category previously recognized by this Court.
¶ 55. This concern becomes even more obvious and pressing in a case like that before us. In the present case, the only evidence before either the Planning Commission or the Board of Supervisors was that there was no change in the character of the neighborhood in question and that all current uses are consistent with its existing zoning, residential and agricultural. The zoning change requested catapults the use of this land from one of the most restrictive (residential and light agricultural) to the least restrictive (1-2 industrial) category.
¶ 56. Under current zoning regulations for the County, an 1-2 zoned area permits establishment as of right of the following types of land uses: junkyards (including autos); gravel pits; fertilizer manufacturing and processing; foundries; meat slaughtering and packing houses, petroleum and petroleum product manufacturing, plastic products manufacturing; stockyards; solid waste and/or recycling companies and transfer stations; asphalt manufacturing plants; concrete manufacturing plants; paint, oil, shellac and lacquer manufacturing; wood preserving by creosote impregnation treatment plants; auto and truck cleaning; auto and motorcycle race tracks; chemical manufacturing; and poultry processing. All of these endeavors necessarily include traffic, pollu *283 tants, noise and/or odor problems for the residents of this neighborhood.
¶ 57. Also permitted as of right are drinking establishments, which includes by definition (in the Harrison County zoning ordinances) private clubs. Since 1-2 zoning permits these uses “by right,” no additional authority would be necessary to establish such facilities; they could simply exist in the middle of residential property.
¶ 58. As the majority notes, Hurricane Katrina had a substantial impact on Harrison County, including Saucier. The majority’s conclusion ignores that Saucier citizens are as entitled to legal protection as those in any other area of the county. The legal mechanisms by which this Court has always measured proposed zoning changes are being setting aside, without request by any party or explanation by the majority, in favor of making Saucier the metaphorical sacrificial lamb to the changes Katrina has wrought. The majority’s conclusion that rezoning the Saucier property is in the best interests of Harrison County contradicts established law and provides a remedy neither sought nor argued for by any party.
¶ 59. Even if the vague and general statements of a demographic shift in the county from south to north were sufficient to establish two-thirds of Harrison County as “a neighborhood,” the majority also ignores that there exists no evidence of actual change. In the past, this Court has looked to the uses being made of the subject property and its environment, whether those uses constitute a change from prior uses and, if so, how much of a change.
¶ 60. In determining whether there has been substantial change in a neighborhood, our appellate courts have looked to zoning changes in the adjacent areas (McWaters v. City of Biloxi, 591 So.2d 824 (Miss.1991) and Woodland Hills Conservation Ass’n, Inc. v. City of Jackson, 443 So.2d 1173 (Miss.1983)); substantial deterioration of a neighborhood through increased crime and troublesome activity (Walters v. City of Greenville, 751 So.2d 1206 (Miss.Ct.App.1999)); and similar other concerns. Changes ordinarily must be shown by comparable evidence, such as maps establishing previously-rezoned areas in the neighborhood; statistical changes, including quantification of nonconforming commercial or industrial usage; or even a showing that the zoned use had receded, though not necessarily replaced by a nonconforming usage. Sea Lands, 759 So.2d at 1227.
¶ 61. This Court has held that in the absence of such “comparable evidence, there can be no showing of a material change in the neighborhood.” Sea Lands, 759 So.2d at 1227-28. See also Cockrell, 950 So.2d at 1095.
¶ 62. We also have held that one or two instances of nonconforming use or minimal alteration to surrounding areas does not qualify as substantial change. Wright v. City of Jackson, 421 So.2d 1219 (Miss.1982) (holding that minimal new commercial use in area and recent construction of interstate highway two miles away do not constitute substantial change in character). See also Cockrell, 950 So.2d at 1096.
¶ 63. In the present case, there is no question that no evidence was presented to any fact-finder below that any change at all had occurred in or around the Saucier property at issue. The basis of the petition to rezone was, by the petitioner’s own statements, need and need alone:
I wanted to talk about the need for this park because that’s what the whole basis of this application is based on is need. Obviously, there is a need for more industrial land. We are running out of land. The demand since Katrina has been surpassing anything we had anticipated.
*284 Also, if you’ll see, all of this [existing] industrial land is basically south of 1-10. Obviously, there’s a need with the growth to the north, there is a need to have industrial sites north of 1-10.
¶ 64. Need is but one element necessary to rezone, and it is insufficient alone to permit rezoning in the absence of substantial change to the neighborhood (of which the HCDC provided no evidence whatsoever). To the contrary, the only relevant evidence provided for the area in question is that it continues to be used for residential and agricultural purposes. Use in conformity with existing zoning simply does not constitute a change in character. Wheatley Place, 468 So.2d at 84; Inman, 405 So.2d at 113; Jitney-Jungle, 311 So.2d at 654; Martinson, 215 So.2d at 418.
¶ 65. The HCDC neither argued nor presented any evidence of a change in the character of the neighborhood. Neither the Planning Commission nor the Board of Supervisors made any findings of fact or even unsupported conclusions that there had been a change in the character of the neighborhood, nor is there any evidence to support such findings, had they been made. In the absence of such findings, this Court is bound by rule of law to find the Board of Supervisors’ approval of the petition to rezone arbitrary and capricious. Conerly, 509 So.2d at 884 (citing Lewis, 184 So.2d at 387; and Martinson, 215 So.2d at 417-18).
¶ 66. I respectfully dissent.
GRAVES, P.J., and KITCHENS, J., JOIN THIS OPINION.