890 So.2d 938 (2004)
Laurie KULUZ, Appellant,
v.
CITY OF D'IBERVILLE, Mississippi, Appellee.
No. 2003-CA-01095-COA.
Court of Appeals of Mississippi.
July 27, 2004.
Rehearing Denied October 5, 2004.
Certiorari Denied January 6, 2005.
*939 Wayne L. Hengen, Biloxi, attorney for appellant.
Gary White, Tricia Tisdale, Gulfport, attorneys for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. The Veterans of Foreign Wars Post # 6731 (VFW Post) applied for a zoning change for the land within the City of D'Iberville (the City) on which their Post was located for the purpose of building a Recreational Vehicle (RV) park for VFW members visiting the area. The requested change was from R-1 (residential) to C-2 (commercial). The City's planning commission recommended approving the re-zoning request, and the City council approved the request. Laurie Kuluz, one of several nearby landowners who objected to the re-zoning, appealed to the Circuit Court of Harrison County, which affirmed the City counsel's decision. She now appeals to this Court asserting three issues which we quote verbatim:
*940 I. WHETHER ON NOT THE CITY CAN CHANGE THE ZONING OF A PARCEL OF LAND FROM RESIDENTIAL TO COMMERCIAL BASED ON COMMERCIAL DEVELOPMENT ON THE OTHER SIDE OF A STATE HIGHWAY AND AN INTERSTATE AS FAR AWAY AS A MILE OR TWO.
II. WHETHER OR NOT THE CITY CAN CHANGE THE ZONING OF A PARCEL OF LAND FROM RESIDENTIAL TO COMMERCIAL BASED ON THE NEEDS OF THE GULF COAST AND THE ECONOMIC GROWTH OF THE CITY.
III. WHETHER OR NOT THE ZONING CHANGE FROM RESIDENTIAL TO COMMERCIAL WAS ILLEGAL SPOT ZONING.
Finding no error, we affirm.

STANDARD OF REVIEW
¶ 2. The standard of review in zoning matters is well settled. A "zoning decision of a local governing body which appears to be `fairly debatable' will not be disturbed on appeal, and will be set aside only if it clearly appears the decision is arbitrary, capricious, discriminatory, illegal, or is not supported by substantial evidence." City of Biloxi v. M.C. Hilbert, 597 So.2d 1276, 1280 (Miss.1992). See also, Briarwood, Inc. v. City of Clarksdale, 766 So.2d 73 (¶ 25) (Miss.Ct.App.2000). However, the corollary rule is that "before a zoning board reclassifies property from one zone to another, there must be proof either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification, and that there was a public need for re-zoning." Board of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 883 (Miss.1987). See also, Briarwood, Inc., 766 So.2d at (¶ 24). In this case, there was no contention of a mistake in zoning. The issues center around the questions of whether there had been a change in the character of the neighborhood, and whether there was a public need for the re-zoning.

I. WHETHER ON NOT THE CITY CAN CHANGE THE ZONING OF A PARCEL OF LAND FROM RESIDENTIAL TO COMMERCIAL BASED ON COMMERCIAL DEVELOPMENT ON THE OTHER SIDE OF A STATE HIGHWAY AND AN INTERSTATE AS FAR AWAY AS A MILE OR TWO.
¶ 3. In the circuit court, Kuluz contended that the City arbitrarily defined the neighborhood in which the VFW Post was located. The VFW Post and the City contended that the neighborhood consisted of the entire portion of the city north of Interstate 10 (the interstate), which bisected the entire city. Approximately, twenty-five percent of the City was north of the interstate, and seventy-five percent of the City was south of the interstate. Kuluz contended that the proper neighborhood was approximately two-third's smaller than that contended by the VFW Post and the City, and properly comprised only the extreme northwest corner of the City. Kuluz's contention was that the western one-third of the area north of the interstate was separated from the eastern two-thirds of the area by a state highway.
¶ 4. The record indicates that prior to the City's incorporation, most of the land north of the interstate was agricultural, and when the City first adopted its comprehensive zoning ordinance, the area was a mix of agriculture and rural residential housing. Since 1996, there had been approximately twenty zoning changes to the area north of the interstate allowing commercial development by re-zoning land to either C-2 (commercial) or ID-D (interstate).[1] *941 At the time of the zoning hearing, the eastern two-thirds of the City lying on the northern side of the interstate had been continuously zoned for commercial development, though residential use still existed in the extreme northern edge of the City's boundaries, with the commercially-zoned areas separating the residentially-zoned area from the interstate corridor. The area Kuluz contended properly comprised the neighborhood was the only section of the City north of the interstate still containing residentially-zoned property adjacent to the interstate. It appears from the record that the area Kuluz contended comprised the neighborhood had been impacted by commercial development less than the eastern two-thirds of the area north of the interstate. The western one-third consisted mostly of rural, residential housing existing alongside not only the VFW Post but also a Moose Lodge, and these uses had co-existed even prior to the area being incorporated. However, inside even this smaller area, two pieces of property had already been zoned commercial, and the area was bisected by the right-of-way for a Mississippi Power Company power line. In fact, Kuluz and others who opposed the re-zoning were not primarily opposed to the VFW Post's proposed use of its property as an RV park for out-of-town VFW members visiting the area, but they opposed the increasing encroachment of commercial growth and were concerned that if the VFW Post sold its property a subsequent owner could utilize the property in a manner inconsistent with the residential use of their property.
¶ 5. At the time of the zoning request, the City was in the process of adopting a future land use plan. This plan foresaw a continuous strip of commercially-zoned property along the north side of the interstate corridor throughout the City. The City proposed to facilitate the ongoing commercial expansion along not only the Interstate 10 corridor, which bisected the City on a east-west line, but also the Interstate I-110 corridor, which bisected the City on a north-south line. The future land use plan foresaw residential development being buffered from the interstates by the strips of commercially zoned property. Jimmy Gouras, a consultant hired by the City to develop the future land use plan, testified before the planning commission and the City council that the VFW Post was roughly contiguous to the areas already planned for commercial zoning, and granting the zoning request would be consistent with the future land use plan.[2]
¶ 6. The circuit court found that the facts could support finding for either side as to what area comprised the neighborhood. Because either side could point to valid reasons for their contentions of what the neighborhood should be, the court said, "the issue of defining the area of the applicable `neighborhood' is `fairly debatable.'" The record supports the circuit court's finding. While Kuluz was correct that the area which she proposed should be construed as the neighborhood is still mostly residential, the City was also correct that the commercial pressure on the area Kuluz proposed to be the neighborhood was no different from the commercial pressure that had already led to the eastern portion of the interstate corridor being re-zoned for commercial development. Moreover, the record showed that the commercial *942 pressure had already altered even the smaller area favored by Kuluz as the neighborhood.
¶ 7. Nevertheless, Kuluz contends in her brief that the eastern two-thirds of the area north of the interstate were "peripheral" and improperly considered as part of the neighborhood. Kuluz cites, for the proposition that a city cannot define a neighborhood that includes peripheral property that has inconsistent uses, Saunders v. City of Jackson, 511 So.2d 902 (Miss.1987). Saunders is analogous in that it involved the City of Jackson's attempt to restrict commercial development to one side of Old Canton Road and opposite from former Governor Barnett's residence, and the supreme court found the preservation of existing neighborhoods to be a legitimate interest; however, in denying a re-zoning request, the supreme court affirmed the municipality's decision stating,
[n]o doubt on this record the city fathers would have been justified in granting the requested rezoning. However, it is equally clear there was presented substantial evidence to support the decision made by the Jackson City Council. Where, as here, there is substantial evidence supporting both sides of a rezoning application, it is hard to see how the ultimate decision could be anything but "fairly debatable," not "arbitrary and capricious," and therefore beyond our authority to overturn.

Id. at 907.
Given the record in this case, the circuit court was correct in upholding the City's decision. There was substantial evidence to support a finding that the entire section of the City north of the interstate corridor was one neighborhood. While the record might also have supported the City council finding that the neighborhood was the smaller area favored by Kuluz, it was neither within the circuit court's, nor is it this Court's, scope of review to make that finding of fact. There is no merit to this assignment of error.

II. WHETHER OR NOT THE CITY CAN CHANGE THE ZONING OF A PARCEL OF LAND FROM RESIDENTIAL TO COMMERCIAL BASED ON THE NEEDS OF THE GULF COAST AND THE ECONOMIC GROWTH OF THE CITY.
¶ 8. Kuluz contends that the VFW Post and the City failed to show any public need for an RV park, so the zoning change was not supported by substantial evidence. Additionally, Kuluz contends that even if there had been a showing of a public need for an RV park, the VFW Post and the City had the burden of proof to show that the site chosen was in the "best interest" of the City.
¶ 9. The record does not support Kuluz's contention. It is true that the City showed no general need for an RV park. However, general RV parking was not the issue of this case. The VFW Post sought to build the RV park solely for the use of out of state veterans who traveled to the Gulf Coast, many of whom would be seeking medical treatment. None of the witnesses who testified in opposition to the zoning change had a complaint about the VFW Post, and there was no showing that the VFW Post's use of an RV park would in anyway be inconsistent with the residential use of Kuluz or any other resident. In fact, the record reflects that there was some discussion of abandoning the request for a zoning change and obtaining a variance, but the record is silent on why this approach was abandoned. At any rate, the record shows that the VFW Post showed that VFW members wished to utilize the VFW Post's property for short-term, low-cost visits. Moreover, the record showed that the VFW Post agreed to put the RV *943 park at the City's use should a hurricane or other natural disaster occur, and the City's fire chief testified that this would be useful for the City. Recreational uses and public safety are two justifications of public need. Fondren North Renaissance v. Mayor and City Council of City of Jackson, 749 So.2d 974 (¶¶ 15-16) (Miss.1999).[3] Kuluz contends that the VFW Post and the City had the burden to show that the RV park could not be situated elsewhere. There is a logical inconsistency to this argument, in that the record shows that the VFW Post's purpose in having an RV park was to provide a low cost benefit to VFW members. If the VFW Post itself had to relocate to provide that benefit, the purpose would obviously be defeated.
¶ 10. The real substance of Kuluz's argument is that she contends the City failed to show that it was in the City's "best interest" to allow commercial development in the area which she contended was the correct neighborhood. The only authority she cites in this proposition is Old Canton Hills Homeowners Assoc. v. Mayor and City Council of the City of Jackson, 749 So.2d 54 (Miss.1999). However, as in the previous assignment of error, Kurtz essentially is asking this Court to re-weigh the evidence. This is not the appropriate standard of review.
While this Court may not have reached the same conclusion on a de novo review of the facts, we conclude that there is sufficient evidence regarding a change in the neighborhood to make this issue a fairly debatable one. This Court also finds substantial evidence in the record supporting a finding of a public need for the Avery project. The record indicates that the development of the Avery property is potentially of great benefit to the City, and there is little indication that the best interests of the City would be served by the continued undeveloped status of the property. The record supports a conclusion that the City of Jackson planning officers made a good faith and diligent effort to meet the concerns of as many area residents as possible, while at the same time permitting the development of this very important piece of Northeast Jackson real estate.
Id. at (¶ 26).
The record in this case showed that the City council took into account objections of the residential landowners including Kuluz, and in an attempt to balance increasing commercial pressure, as well as residential needs, was adopting a future land use plan that would allow limited commercial development along the interstate corridor, while preserving some residential development north of the interstate. A future land use plan that is consistent with a proposed zoning change is evidence of public need. See McWaters v. City of Biloxi, 591 So.2d 824, 828 (Miss.1991). Testimony supported finding that the RV park furthered the City's recreational and public safety needs. Moreover, the VFW Post's proposed use of its property is not inconsistent with Kuluz's use of her property. On this record, this Court cannot say there is no showing of public need, or that the City failed to act in the best interest of its citizens.

III. WHETHER OR NOT THE ZONING CHANGE FROM RESIDENTIAL TO COMMERCIAL WAS ILLEGAL SPOT ZONING.
¶ 11. Kuluz contended in the circuit court that the re-zoning amounted to spot zoning. "The term "spot zoning" is *944 used by the courts to describe a zoning amendment which is not in harmony with the comprehensive or well-considered land use plan of a municipality." City of Biloxi, 591 So.2d at 828. However, the mere fact that the use for which a piece of property is re-zoned will be inconsistent with the previous zoning classification, or even with some of the other uses of nearby property, does not necessarily make a re-zoning decision spot zoning.
Not all amendments which change or alter the character of a use district fall within the category of "spot zoning" as we generally understand the term. The term "spot zoning" is ordinarily used where a zoning ordinance is amended reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith. Whether such an amendment will be held void depends upon the circumstances of each case. The one constant in the cases, as stated by the textwriter, where zoning ordinances have been invalidated due to "spot zoning" is that they were designed "to favor" someone. See 1 Yokley Zoning Law and Practice §§ 8-1 to 8-3 (3rd ed.1965).
McKibben v. City of Jackson, 193 So.2d 741, 744 (Miss.1967).
In this case, the record shows that there had been two previous re-zoning decisions even within the area Kuluz asserted was the neighborhood, and the decision giving rise to this appeal was consistent with the City's future use plan. The VFW Post's proposed use is not out of context with any property's present use. Moreover, the re-zoning was consistent with the future land use plan. These facts could not support a finding of spot zoning, and the circuit court did not err in rejecting this argument. There is no merit to this assignment of error.
¶ 12. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. THE APPELLANT IS ASSESSED ALL COSTS OF THIS APPEAL.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] ID-D classification permits commercial use.
[2] Kuluz objected to Gouras' testimony in favor of the zoning change on the basis that his testimony was prejudicial, and the City council was not an unbiased fact finder. Upon appeal, Kuluz moved to strike the portion of the record containing his testimony, but in an order dated December 30, 2003, the supreme court denied this motion.
[3] Although the record does not include discussion of sales tax, it would appear that out of town VFW members would contribute to local sales tax. Tax considerations are another justification for public need. Fondren North Renaissance, 749 So.2d at (¶ 16).