950 So.2d 1086 (2007)
Lisa COCKRELL and J.M. Cockrell, Appellants
v.
PANOLA COUNTY BOARD OF SUPERVISORS, Appellee.
No. 2005-CA-02240-COA.
Court of Appeals of Mississippi.
March 6, 2007.
*1088 John Thomas Lamar, Senatobia, attorney for appellant.
Thomas S. Shuler, Sardis, attorney for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. J.M. and Lisa Cockrell appeal the judgment of the Panola County Circuit Court. That court affirmed the decision of the Panola County Board of Supervisors ("Board of Supervisors") to rezone property owned by Sheryll and Linda Martin, located adjacent to the Cockrells' property, from agricultural to industrial. The Board of Supervisors also approved a special exception in order for the Martins to relocate a scrap metal yard to this property. The Cockrells appealed to this Court and raise three issues: (1) whether the character of the area has changed and there is a public need in order to justify rezoning, (2) whether the rezoning of this property constitutes spot zoning by the Board of Supervisors, and (3) whether the Martins' application for a special use permit met the required elements to obtain that permit. We find that the Martins failed to prove by clear and convincing evidence a change in the area of the property at issue to warrant rezoning from agricultural to industrial. Accordingly, we reverse the judgment of the Circuit Court of Panola County which affirmed rezoning by the Board of Supervisors.

FACTS AND PROCEDURAL HISTORY
¶ 2. This dispute commenced in December of 2004, when Sheryll and Linda Martin, owners of 124 acres of real property at 2296 Holston Road in rural Panola County, filed an application to rezone their property from agricultural (A-1) to industrial (I). The Martin family owns Martin Brothers Scrap Metal, which has operated a scrap metal yard adjacent to the city limits in Sardis since 1977. They wish to relocate their Sardis scrap yard to the property in rural Panola County. At the time this rezoning application was filed, however, the Cockrells were in the midst of constructing a 10,000 square foot, plantation-style home valued at approximately $1,000,000 on 105 acres adjacent to the property on which the Martins' proposed to relocate their metal scrap yard.
¶ 3. When the Cockrells commenced construction of their home, they relied on the fact that their property and all of the surrounding real property adjoining Holston Road in the area between and around Highway 51 and Interstate 55 was zoned agricultural. The property had been zoned agricultural since July 1, 2002, when *1089 the Board of Supervisors had adopted the Panola County, Mississippi Land Use District Ordinance ("Ordinance") prepared by the Panola County Land Development Commission ("Commission").[1] No property outside of the county's municipalities was zoned industrial. Prior to July 2002, the county did not have any zoning ordinance in place. The Ordinance stated in detail its purposes, the various zoning categories and their respective special exceptions, use limitations, and the allowance of limited non-conforming uses already in existence.
¶ 4. One such non-conforming use already in existence when the Cockrells bought their property was Hanson Industries, a culvert manufacturing and storage business, located diagonally across the road from the Cockrells' property. This business has been in operation at that location for over thirty years. Even though the property was zoned agricultural, the Ordinance effectively "grandfathered" in this business, with the limitation that the plant could not expand unless in conformity with the Ordinance. Also, a mini-storage business, Mini Systems, that makes or stores metal warehouses, had been constructed in the last couple of years within one-half a mile from this area.
¶ 5. A series of hearings was held before the Commission which oversees the Ordinance concerning the Martins' rezoning and special exception application. According to the Ordinance, in order for the Martins to relocate their scrap metal yard to this rural area, it was necessary for them to complete a two-step process: first, the property must be rezoned from agricultural to industrial, and then the Martins must obtain a special exception to the industrial zoning.[2] The Commission held its first hearing on January 10, 2005, when the Martins presented evidence in defense of their rezoning request. Several nearby landowners, including the Cockrells, submitted objection letters on this date regarding the Martins' rezoning application. Also at this meeting, the Commission told the Martins that they needed to apply for a special exception to the zoning order so as to relocate their scrap metal business from Sardis. The Commission took the matter under advisement until their next meeting on February 14, 2005. The Martins then amended their application to request the special exception as well.
¶ 6. At the February meeting, the Commission voted to approve the Martins' rezoning request. Additionally, the Commission had a hearing on the special exception issue. Both sides presented their arguments. The Commission deferred the matter until their next meeting. On March 14, 2005, the Commission decided to grant the special exception for the Martins' *1090 scrap metal yard with several restrictions.[3]
¶ 7. From the hand-drawn map included in the record as an exhibit to the Martin's application to rezone the property submitted to the Board of Supervisors together with other, verbal descriptions of the area, it appears that the Martin property is immediately to the south of Hanson Industries, immediately to the east of the Cockrells' 105-acre tract, immediately to the west of a six-acre tract used for residential purposes by Mr. and Mrs. Evans since 1982, and diagonally south-east of a 273.5-acre residential tract owned by Dr. and Mrs. Black, who wish to develop their land for residences. The Blacks and the Evanses also opposed the rezoning and wrote objection letters to the Board. The mini-warehouse is approximately one-half mile to the west, with the Cockrell's property and Highway 51 lying in between. All of this property surrounding the area to be rezoned remains zoned agricultural.
¶ 8. Aggrieved by the rezoning, the Cockrells properly appealed both of the Commission's decisions to the Board of Supervisors. On April 11, 2005, the Board of Supervisors held a hearing on the Cockrells' appeal. The Martins had the burden of going forward at this hearing. Representatives for Martin Brothers Scrap Metal gave a history of their business and the alleged benefits to Panola County in relocating their business from Sardis. They stated that they chose this location because it would have the least impact on the fewest people. Stating that the existing Sardis scrap yard would be closing if they relocated, the Martins maintained that the move to rural Panola County would benefit the entire community because the scrap metal yard would be adjacent to fewer residences than in Sardis. Further, they contended that the entire rural area was "prime for industrial purposes" because of its location near a railroad, Highway 51, and Interstate 55, while keeping industrial traffic out of Como and Sardis. Some of this industrialization had already begun, they contended, with the expansion of Hanson Industries since 2002, when the Ordinance was approved, and the development of Mini Systems. Also mentioned was that a group called the Panola Partnership had looked at a nearby site for a future industrial park.
¶ 9. Counsel for the Cockrells, however, submitted to the Board of Supervisors a memorandum setting forth the legal limitations in order for the Board to rezone the property. Also brought forward at the hearing and documented were pollution problems that the Martin Brothers had at their Sardis location in the late 1980s involving the EPA and state pollution control agency.[4] Additionally, the Cockrells provided photos showing the current unsightly, offensive nature of the salvage metal yard in Sardis. Charles A. Goforth, a consultant in land use planning, explained his opinion of this situation outlined in a letter submitted to the Board of Supervisors on April 8, 2005.
¶ 10. Goforth, through testimony and his opinion letter, maintained that even though the Cockrells built their home near the Hanson plant, that facility was classified as a non-conforming use, and the property was never zoned industrial. He said a non-conforming use is "one of those *1091 things . . . you just leave [] alone and hope it goes away. . . . You don't encourage it to stay by giving it any additional legal expansion potential." Explaining that "special exceptions" were those things which were really not appropriate for the area's zoning, Goforth stated that the salvage metal yard special exception directly violated three purposes established by the Ordinance: (1) promoting stable and attractive development, (2) conserving the value of land as a sound investment, and (3) encouraging the compatibility of adjacent land uses. After Goforth's testimony the Board of Supervisors asked questions and took the matter under advisement. Each supervisor who was not familiar with the area was asked to visit it.
¶ 11. On April 18, 2005, the Board of Supervisors unanimously approved the change in zoning from agricultural to industrial and granted the special exception for the 124 acres of the Martins' property. In its order, the Board of Supervisors "determined that there had been a change in the character of the surrounding area which justified the re-zoning in that the Hanson Plant had expanded since the original zoning was enacted and a public need existed for additional property to be zoned industrial so that additional employment could be created and to meet the public need of a place to dispose of metal products." No other specific factual findings of change were articulated in this order. Again aggrieved, the Cockrells perfected their appeal to the Panola County Circuit Court and on June 6, 2005, filed a bill of exceptions to the Board of Supervisors' decision. A hearing was held in the circuit court on November 3, 2005, and shortly thereafter that court entered an order affirming the decision of the Board of Supervisors, stating, at a minimum, the decision of the Board of Supervisors was "fairly debatable" and the court could not say that the Board of Supervisors acted arbitrarily or capriciously. The Cockrells then perfected their appeal to this Court.

STANDARD OF REVIEW
¶ 12. The zoning decisions by the board of supervisors or land development commission will only be set aside if the decisions clearly appear to be arbitrary, capricious, discriminatory, illegal, or are unsupported by substantial evidence. Kuluz v. City of D'Iberville, 890 So.2d 938, 940(¶ 2) (Miss.Ct.App.2004) (quoting City of Biloxi v. M.C. Hilbert, 597 So.2d 1276, 1280 (Miss.1992)). Moreover, the Mississippi Supreme Court has held repeatedly that the rezoning decision by the governing authority will not be disturbed on appeal if the question is "fairly debatable." New Albany v. Ray, 417 So.2d 550, 552-53 (Miss.1982) (citing Bell v. City of Canton, 412 So.2d 1179 (Miss.1982); Killegrew v. City of Gulfport, 293 So.2d 21 (Miss.1974); Currie v. Ryan and City of Hattiesburg, 243 So.2d 48 (Miss.1970); Ridgewood Land Co. v. Moore, 222 So.2d 378 (Miss. 1969); Paine v. Underwood, 203 So.2d 593 (Miss.1967)). Before the zoning authority rezones the property, though, it must have proof of either: (1) a mistake in the original zoning plan, or (2) that there has been a change in the character of the area to such an extent so as to justify reclassification, and that there was a public need for rezoning. Kuluz, 890 So.2d at 940(¶ 2) (quoting Bd. of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 883 (Miss.1987)).

LAW AND ANALYSIS
I. Whether the character of the area has changed sufficiently to justify reclassification in zoning and whether there is a public need for rezoning.
¶ 13. There is a strong presumption, recognized repeatedly by the Mississippi Supreme Court, that comprehensive *1092 zoning ordinances that are adopted or amended by local governing authorities are well planned and meant to be permanent. Town of Florence, Miss. v. Sea Lands, Ltd., 759 So.2d 1221, 1224(¶11) (Miss.2000); Wright v. Mayor and Comm'rs of City of Jackson, 421 So.2d 1219, 1222 (Miss.1982) (citing Cloverleaf Mall Ltd. v. Conerly, 387 So.2d 736, 740 (Miss.1980); Martinson v. City of Jackson, 215 So.2d 414, 417 (Miss.1968)). Zoning ordinances are presumed to be reasonable and for the public good. Sea Lands, Ltd., 759 So.2d at 1227(¶23) (citing Board of Aldermen v. Conerly, 509 So.2d 877, 883 (Miss.1987)). A presumption of reasonableness applies to rezoning as well as to the original zoning regulation, "but not with the same weight, the presumption being that the zones are well planned and arranged to be more or less permanent, subject to change only to meet a genuine change in conditions." Id. Because of this presumption, the burden of proof rests on the applicant wanting to rezone the property, and he must prove either mistake in the original zoning, or substantial change in the character of the area together with a public need for rezoning. Kuluz, 890 So.2d at 940(¶ 2). The initial burden of proving the change in zoning is on the property owner requesting the change, by clear and convincing evidence. Gillis v. City of McComb, 860 So.2d 833, 835(¶ 5) (Miss.Ct.App.2003) (citing City of Madison v. Shanks, 793 So.2d 576, 578(¶ 7) (Miss. 2000)).
A. Change in the character of the area.
¶ 14. The Mississippi Supreme Court has not hesitated to reverse board of supervisors' decisions regarding rezoning when substantial evidence of change in the character of the area is not met. See, e.g., Wright v. Mayor and Comm'rs of City of Jackson, 421 So.2d 1219, 1223 (Miss. 1982); City of Oxford v. Inman, 405 So.2d 111, 112 (Miss.1981); Hughes v. Mayor and Comm'rs of City of Jackson, 296 So.2d 689, 691 (Miss.1974). It is clearly within our judicial discretion to reverse a rezoning ordinance which was adopted based on insufficient proof. Inman, 405 So.2d at 114. As far as how substantial the change needs to be to warrant rezoning, zoning authorities should ask whether the changes justify rezoning. Woodland Hills Conservation Assoc., Inc. v. City of Jackson, 443 So.2d 1173, 1182 (Miss.1983). However, use of property in accordance with the original zoning plan is not a material change of conditions warranting rezoning. Cloverleaf Mall Ltd. v. Conerly, 387 So.2d 736, 740 (Miss.1980) (citing Jitney-Jungle, Inc. v. City of Brookhaven, 311 So.2d 652 (Miss.1975)).
¶ 15. Here, the Board of Supervisors justifies the rezoning because of a supposed change in the area, not because of a mistake in the original zoning ordinance.[5] The Board of Supervisors, in its brief, points to the following alleged evidence of change in the character of the area.[6] First, the Board claims that in the previous three years Hanson Industries, located adjacent to the Martins' property and diagonal to the Cockrells' property, had made "significant expansions" to its culvert manufacturing and distribution operations, including "occupying additional space and *1093 including additional production lines." Second, the Board of Supervisors states knowledge of evidence that a maker of storage buildings had opened a warehouse or distribution facility, Mini Systems, one half a mile from the Martins' property in the last three years.[7] Finally, the Board points to previous attempts by the county's industrial development authority, the Panola Partnership, to market and develop the area about one mile to the east of the Martins' property, on the east side of Interstate 55, as a major industrial site. Mr. Shuler, at the Board of Supervisors' hearing, thus concluded, "[s]o there is, I think without any doubt, a movement towards the utilization of this area for industrial purposes." The Board of Supervisors' order determined that there had been a change in the character of the surrounding area because of the expansion of the Hanson plant since the Ordinance had been enacted in July of 2002.
¶ 16. After applying the proper standard of deference to the Board of Supervisors' decision and reviewing the entire record, we find that the Board erred in rezoning the Martins' property. The Martins did not meet their burden of presenting to the Board of Supervisors clear and convincing evidence of substantial change in the character of the area. The Board of Supervisors' order determined that change in the area had occurred, and justified the decision solely because of the expansion of Hanson Industries. However, the record is devoid of any clear and convincing evidence of expansion of the Hanson plant, except for the statements made by attorney Shuler at the Board of Supervisors' April 2005 hearing that "Hanson has within the last three years expanded its operation, made a rather significant expansion. They're occupying more space and doing more activities. More lines, in fact, on that site, so it's growing." There is no evidence in the record of substantial change, such as increased traffic, facilities production, or employees at Hanson Industries.
¶ 17. We find the supreme court decision in Town of Florence instructive. In affirming the circuit court's reversal of the rezoning order at issue, the court explained:
While it is impossible to articulate or design a particular test for determining what is sufficient evidence to show a material change and a public need to support rezoning, it does not appear that in this case Florence was presented with such evidence. Expert testimony at the hearing reflected such and evidenced the need for affordable multi-family housing, as contemplated by the recently adopted Comprehensive Plan. In addition, there was no substantial evidence showing that areas surrounding the subject property had been recently rezoned or that there were statistics or mapped circumstances of a growing change in the neighborhood. Florence was presented with some evidence that there had been several single-family residences built in the area since the 1977 rezoning, although there was no real quantification of that construction. There were no maps or charts proving the number of homes constructed, or their location or impact upon the character of the neighborhood. There was no substantial evidence to support Florence's decision that the subject property was unsuited to the construction of multi-family residences, or that there was a need for additional land to construct single-family *1094 residences. Without comparable evidence, there can be no showing of a material change in the neighborhood.

Town of Florence, 759 So.2d at 1227-28(¶ 24) (emphasis added). In this case, the only expert testimony, that of Mr. Goforth, was that "the only change that's happened in the area is the construction of the new home by the Cockrells." Further, there were only vague references by Mr. Shuler that the Hanson plant was expanding or growing. As in Town of Florence, there were no previous rezonings, statistics or mapped circumstances of growing change and no quantification of any increases.
¶ 18. Moreover, when the original zoning ordinance was enacted in July 2002, Hanson Industries was considered a nonconforming use on agriculturally zoned property. By definition in the Ordinance itself, a nonconforming use "shall not be . . . [c]hanged to another non-conforming use. . . . [or] [e]xtended except in conformity with this ordinance." While not every increase in volume of business is an illegal expansion of a nonconforming use, "an enlargement of a nonconforming business so as to be different in kind in its effect on the neighborhood" is prohibited. Eugene McQuillin, 8A The Law of Municipal Corporations § 25.207 (3rd ed.1994) (emphasis added). This Court fails to understand how Hanson Industries could have expanded to such an extent so as to change the character of the surrounding neighborhood without violating the Ordinance's prohibition on expansion of nonconforming uses. At oral argument, the Court asked the Board's attorney the extent of Hanson Industries' expansion, and how the expansion was allowed with the Ordinance in place. Mr. Shuler responded that, as far as Hanson Industries, he did not know the extent of its expansion, and that it may have been in violation of the Ordinance by expanding. Rather than determining that Hanson's expansion may have been in violation of the Ordinance, we hold that the record is inadequate to show expansion sufficient to change the character of the surrounding neighborhood.
¶ 19. In its brief, the Board of Supervisors also notes as evidence of change in character the Mini Systems operation. However, because this business is approximately one-half mile away from the Martin's property, and all of the land surrounding the Martin's is zoned agricultural according to the maps in the record, we do not consider it in the same "neighborhood" as the Martin's property. In Wright v. Mayor and Comm'rs of City of Jackson, 421 So.2d 1219, 1223 (Miss.1982), the Mississippi Supreme Court reversed rezoning of an area from residential (single and two-family) to commercial (residential-town-house) because of lack of a substantial change and public need in the neighborhood. Id. The court found that claims of an increase in population of an already industrial area and recent interstate construction were not sufficient proof of change in the neighborhood and were in conformity with the current zoning. Id. Other changes pointed to as evidence of change were deemed by the court not to occur in the subject property's neighborhood, but were nearly two miles away with an Interstate in between. In the instant case, Mini Systems is approximately one-half mile away on the other side of Highway 51, with nothing but agricultural land in between. Further, the Board of Supervisors did not rely on Mini Systems as an indicator of change in the area. We find that the Martins have failed to establish Mini Systems as part of the "neighborhood" with their property.[8]
*1095 ¶ 20. The third "change" noted in the Board's brief is the prior attempts by the Panola Partnership to develop an area one mile from the property at issue as a major industrial site, and its potential for future industrial development. The Board has cited no authority for the proposition that future potential for industrial development can be an indication of change in the character of this area to warrant rezoning. We reject this contention.
¶ 21. In addition to Wright, supra, the Cockrells point to two analogous cases where the Mississippi Supreme Court has reversed rezoning orders. In Hughes v. Mayor and Comm'rs of City of Jackson, 296 So.2d 689, 691 (Miss.1974), a church attempted to rezone its property to commercial, relying on the fact that part of the surrounding property was zoned commercial. Id. at 690. The Mississippi Supreme Court reversed the circuit court and the city council's decision to rezone the property, because "[t]he record in this case is devoid of any evidence reflecting any mistake in the original zoning . . . or showing that conditions in the area of the subject property have changed so substantially as to warrant a rezoning." Id. (Emphasis added). In our case we also find the record devoid of any evidence of change.
¶ 22. In City of Oxford v. Inman, 405 So.2d 111, 112 (Miss.1981), the circuit court reversed the municipality's rezoning of land from agricultural to multi-family residential for lack of sufficient evidence of change. Id. The city argued that development of low-rent housing and a recreational facility was clear and convincing evidence of a change in the area. Id. at 113-14. However, the supreme court affirmed the circuit court's reversal, stating that these developments, which were in accordance with the original zoning plan, were not evidence of a material change in conditions which warranted rezoning. Id. In our case, the Hanson plant has continued operating as a nonconforming use in accordance with the Ordinance since its inception in 2002.
¶ 23. We conclude that there is insufficient evidence in the record to warrant rezoning on the basis of substantial change in character of the neighborhood. There were no previous rezonings, statistics or mapped circumstances of growing change and no quantification of claimed expansion of Hanson Industries. As the supreme court stated in Town of Florence, "Without comparable evidence, there can be no showing of a material change in the neighborhood." Accordingly, we reverse and render judgment in favor of the Cockrells.
B. Public Need.
¶ 24. While further analysis is unnecessary in light of our holding of insufficient change, we address two other intertwined points which have been fully *1096 briefed and submitted for our review. In order to obtain rezoning based upon change in character, the applicant must prove not only substantial change in the character of the area but also a public need for rezoning. Kuluz, 890 So.2d at 940(¶ 2). This Court finds that the evidence presented to the Board of Supervisors of the possible benefits of rezoning to the public is "fairly debatable," and thus, had there been sufficient evidence of change in character, this Court would have affirmed the rezoning order.
¶ 25. At the April 11, 2005 hearing, and in the Board of Supervisors' order and brief, the Board stated that there was a public need for the rezoning through the creation of additional employment and a place to dispose of metal products for Panola County citizens. Also, the Board stated that generally "the area is prime for industrial purposes," noting that running adjacent to the Martins' property is the Canadian National Railroad, necessary for their business. The entire area has not only railroad access but easy access to Interstate 55 at the Como, Mississippi exit for the presumed heavy industrial traffic which would be created by the scrap metal yard. The Board concluded that rezoning this property "industrial" would open up additional industrial sites in the county, and not just the site of the Martins' business. Additionally, the Board of Supervisors argues that it was entitled to consider the fact that relocating the Martins' salvage metal yard to Panola County would benefit Sardis because of the salvage yard's current location in a highly residential area. We agree that relocating the yard would ease Sardis' traffic congestion created by the yard. Addressing the public need for rezoning, the Martins presented a fairly debatable argument that the move of their salvage yard from one location in the county to another would create more employment and "meet the public need to dispose of metal products" for the citizens of Panola County. This finding, however, is an insufficient basis to uphold the Ordinance where no change in character has been established.
¶ 26. The Cockrells and other property owners in the area either bought or built upon their land relying on the agricultural zoning in this predominantly rural area. Except for the one non-conforming use already in existence, Hanson Industries, they could never have expected to be neighbors to an offensive salvage metal yard that will crush, burn, and transport scrap metal by rail and road past their, and others', residences. The rezoning is in conflict with the reason the Ordinance was adopted in the first place: to maintain property values, promote stable development, and encourage compatible land uses with the zoning in place. If allowed, the Martins' relocated salvage yard will degrade the value of the surrounding landowners' property, and encourage incompatible land uses. While we find the Board's decision regarding public need to be fairly debatable, we do not find clear and convincing evidence of substantial change in the character of the area to justify rezoning.
II. Whether the Board of Supervisors' actions constitute "spot zoning."
¶ 27. The Cockrells also raise the issue of "spot zoning" arguing the proposed rezoning would create a dramatic change from the original zoning ordinance adopted in July of 2002. "[S]pot zoning involves amendments to existing zoning ordinances singling out a small area for a use classification which is different-whether more or less restrictive-from that of the surrounding area." Patrick J. Rohan, Zoning and Land Use Controls, § 38A.01[1] (2006). "In the narrow sense *1097 of the term, spot zoning is the arbitrary and unreasonable reclassification of a small area within a zoning district to a use which is inconsistent with the surrounding district, where the rezoning does not conform to a comprehensive plan, serves no public purpose and is solely for private gain." Id. Several issues can be involved in determining if spot zoning has occurred, such as the size and character of the land, and public versus private purpose of rezoning. In their brief, the Cockrells primarily address the issue of private benefit and claim that because the rezoning only benefits the Martins it is spot zoning and thus invalid. The Board of Supervisors counters that below the Board found a public need existed for additional employment and space to dispose of scrap metal, thus the zoning is not spot zoning and valid. We agree with the Board.
¶ 28. In McWaters v. Biloxi, 591 So.2d 824, 828 (Miss.1991), the Mississippi Supreme Court stated,
There is a clear cut distinction between a validly enacted amendatory zoning ordinance and a "spot zoning" ordinance. Not all amendments which change or alter the character of a use district fall within the category of "spot zoning" as we generally understand the term. The term "spot zoning" is ordinarily used where a zoning ordinance is amended reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith. Whether such an amendment will be held void depends upon the circumstances of each case. The one constant in the cases, as stated by the textwriter, where zoning ordinances have been invalidated due to "spot zoning" is that they were designed "to favor" someone. See 1 Yokley Zoning Law and Practice §§ 8-1 to 8-3 (3rd ed.1965).
McWaters, 591 So.2d at 828 (quoting McKibben v. City of Jackson, 193 So.2d 741, 744 (Miss.1967)) (emphasis added). The textwriter further explains that "The mere fact that an area is small and is zoned at the request of a single owner and is of greater benefit to him than to others does not make out a case of spot zoning if there is a public need for it or a compelling reason for it." 2 E.C. Yokley, Zoning Law and Practice § 13-5 (4th ed.1978). In this case, we have previously determined that the decision of the Board of Supervisors that "a public need existed for additional property to be zoned industrial so that additional employment could be created and to meet the public need of a place to dispose of metal products" is "fairly debatable" and will not be disturbed on appeal. See New Albany v. Ray, 417 So.2d at 552-53. Accordingly, we hold that while the rezoning may be of greater benefit to the Martins than to others, the fact that there is a public need for the rezoning, as found by the Board of Supervisors, protects the order from the claim of illegal spot zoning.

CONCLUSION
¶ 29. Because the Martins failed to produce sufficient evidence showing a substantial change in the subject area to justify rezoning since the adoption of the Ordinance in July 2002, the Board of Supervisors was in error in approving the application for rezoning. Likewise, the circuit court erred in affirming the Board of Supervisors' order. Therefore, we reverse the decisions of the circuit court and the Board of Supervisors rezoning the subject property.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
*1098 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The Panola County Board of Supervisors adopted the Land Development Standards and Regulations on March 8, 1999. They were amended on May 22, 2001 and on February 4, 2002. Among the purposes of these standards and regulations were "[t]o protect the public health, safety, and general welfare of the county. . . . To guide the future growth and development of the county. . . . To protect and conserve the value of land throughout the county . . . and to minimize the conflicts among the uses of land and buildings. . . . To prevent . . . pollution. . . . to preserve the integrity, stability, and beauty . . . and the value of the land . . . [and] to ensure appropriate development with regard to these natural features."
[2] The Ordinance states a junk or salvage yard is not a permitted use for an industrially zoned area, and can only be permitted as a "special exception," with the limitation that it shall not "be dangerous or offensive or detrimental to the present or intended character of the . . . [area] or constitute a nuisance due to the emission of dust, gas, smoke, noise, fumes, glare, odor, vibration, fire hazard or otherwise."
[3] Among these restrictions were an earthen barrier no less than nine feet tall along the road that fronts the proposed salvage yard, a line of trees planted along the road as a further shield, no business conducted after 6:00 p.m. on the weekdays and no business at all on the weekends, and a turn lane into the property to prevent traffic back up.
[4] Counsel for Martin Brothers countered that these pollution problems have been rectified.
[5] We note that "a mistake within the meaning of the law is not a mistake of judgment but, rather, a clerical or administrative mistake." Town of Florence, 759 So.2d at 1225 (quoting City of New Albany v. Ray, 417 So.2d 550, 552 (Miss.1982)).
[6] At the hearing of the Board of Supervisors on April 11, 2005, Thomas Shuler, counsel for Martin Brothers Scrap Metal and now counsel for the Panola County Board of Supervisors on appeal, presented these factors as well.
[7] However, the Board of Supervisors' order to rezone did not mention this particular evidence of change in the surrounding area.
[8] Based upon the vague description of Mini Systems' operation in the record, we are unable to determine whether the business is manufacturing or storage or how its construction was in accordance with the Ordinance. The Ordinance outlines permissible uses in an agricultural district to include structures such as single family dwellings, nurseries and greenhouses, schools and churches, country clubs and golf courses, parks and playgrounds, or stables. By special exception, a landowner may build airports, cemeteries, or "commercial retail businesses." When compared to the examples of "retail establishments" contained in C-1 of the Ordinance ("grocery, furniture appliance, apparel, hardware, liquor, jewelry, drug stores and similar uses"), warehouse manufacture or operation does not appear to be included; rather, wholesale and warehouse activities are a separate category of permitted use within a commercial district. When asked during oral argument before this Court how Mini Systems was allowed to locate in this agriculturally zoned area, counsel for the Board could not provide any answer other than he presumed the Commission approved it.