# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01665-COA

RANDY WRIGLEY                                                            APPELLANT

v.

DAVID HARRIS AND MARY ANN HARRIS                                        APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2013 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN WALKER BURROW |
| ATTORNEY FOR APPELLEES: | MARIA M. COBB |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | REVERSED BOARD OF SUPERVISORS' DECISION TO REZONE CERTAIN PROPERTY |
| DISPOSITION: | AFFIRMED - 04/14/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this case, we must determine whether the trial court erred in reversing the local board of supervisors' decision to rezone a parcel of property located in Vancleave, Mississippi.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 10, 2012, Randy Wrigley submitted a request to the Jackson County Planning Department (JCPD) seeking a change in zoning from A-1, Agricultural Residential District, to A-3, Agricultural-Residential District (Smaller-Lot Development).  The parcel

of property contained approximately 163.28 acres and was located in Vancleave, Mississippi. The property was owned by Breland Homes LLC, and was to be converted into a subdivision.

¶3. After a hearing, the JCPD denied Wrigley's request by a vote of 5-2. On a second motion to change the zoning from A-1 to A-2, Agricultural-Residential (Large-Lot Development), the JCPD also denied this request, by a vote of 4-3.

¶4. Wrigley appealed the JCPD's decision to the Jackson County Board of Supervisors (the Board). Wrigley's appeal only requested that the Board consider rezoning the property from A-1 to A-2. After a hearing, the Board took the matter under advisement and ultimately voted to approve the zoning request.

¶5. David and Mary Ann Harris, who own property adjacent to the property at issue, filed an appeal to the Jackson County Circuit Court. Wrigley was granted leave to file an amicus curiae brief in the appeal. The trial court reversed the Board's decision, finding that its decision was not supported by clear and convincing evidence. Wrigley filed an appeal[1] arguing that the trial court applied the wrong legal standard, and erred in reversing the Board's decision.

STANDARD OF REVIEW

¶6. This Court will only set aside a zoning decision if the record clearly shows the decision "to be arbitrary, capricious, discriminatory, illegal[,] or without [a] substantial evidentiary basis." *Drews v. City of Hattiesburg*, 904 So. 2d 138, 140 (¶5) (Miss. 2005).

---

[1] Wrigley's appeal was filed as a taxpayer pursuant to Mississippi Rule of Appellate Procedure 4(i). Attached to his appeal was a notice from the Board stating it did not intend to appeal the trial court's decision.

"Where the point at issue is 'fairly debatable,' we will not disturb the zoning authority's action." *Id*. Because the governing body's decision carries a presumption of validity, "the burden of proof is on the party asserting its invalidity." *Id*. As for questions of law, the standard of review is de novo. *Consol. Pipe & Supply Co. v. Colter*, 735 So. 2d 958, 961 (¶13) (Miss. 1999).

## DISCUSSION

### I.  LEGAL STANDARD

¶7.  Wrigley first contends the trial court applied the wrong legal standard in reviewing the Board's decision. Wrigley argues the trial court evaluated the evidence de novo and substituted the Board's decision with its own. However, the trial court's order is clear that it did not reweigh the evidence but simply verified that substantial evidence did not exist to uphold the Board's decision to rezone the property. This issue is without merit.

### II.  EVIDENTIARY BASIS

¶8.  For an applicant's request for rezoning to be granted, he must prove by clear and convincing evidence either "(1) . . . there was a mistake in the original zoning" or "(2) the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning." *Bridge v. Mayor & Bd. of Aldermen of Oxford*, 995 So. 2d 81, 83 (¶6) (Miss. 2008) (citations omitted). "However, use of property in accordance with the original zoning plan is not a material change of conditions warranting rezoning." *Cockrell v. Panola Cnty. Bd. of Sup'rs*, 950 So. 2d 1086, 1092 (¶14) (Miss. Ct. App. 2007).

¶9.  In *Town of Florence v. Sea Lands Ltd.*, 759 So. 2d 1221, 1227 (¶22) (Miss. 2000), the

3

Mississippi Supreme Court explained the minimum proof that must be provided to support a rezoning decision:

> To support on appeal a reclassification of zones, the record at a minimum should contain a map showing the circumstances of the area, the changes in the neighborhood, statistics showing a public need, and such further matters of proof so that a rational, informed judgment may be formed as to what the governing board considered. Where there is no such proof in the record we must conclude there was neither change nor public need.

(Quoting *Bd. of Aldermen v. Conerly*, 509 So. 2d 877, 886 (Miss. 1987)).

¶10. In this instance, Wrigley did not argue any mistake in the original zoning. Thus, to rezone the property, Wrigley must prove by clear and convincing evidence that "the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning." *Bridge*, 995 So. 2d at 83 (¶6).

¶11. The Board determined that Wrigley proved by clear and convincing evidence that the character of the neighborhood changed enough to justify rezoning and that a public need existed for the rezoning. The Board stated the following evidence "collectively demonstrates/supports the allegation of change":

> 1) public water and sewer, 2) the relocation of a major transportation corridor, Highway 57 (less than 2,500 feet from the area in question), 3) the existence of commercially zoned areas less tha[n] [one-half of a mile] from the area in question, 4) an A-2 district to the north and abutting the property, 5) an increase in the development of subdivisions in the area, and 6) an increase in the construction of new homes in the area over the last [fifteen] years. All of this evidence demonstrates the increasing residential nature of the area, as opposed to agricultural.

¶12. In regard to public need, the Board determined:

> [I]t is evident that since experiencing the impacts of Hurricane Katrina, there has been a population shift and significant development pressure north of I-10,

4

including the area in question. Affordable housing in an area that does not experience surge is needed to accommodate the population shift that has occurred within Jackson County. While those in opposition attempted to use vacancies in apartment complexes and other types of housing to rebut the allegation of public need, the Board finds that the existence of vacancies of other types of housing failed to rebut a public need for affordable homeownership in a non-surge low density, single-family residential area to accommodate the shift in population and development pressure being experienced by the area.

¶13. The trial court determined that Wrigley failed to produce clear and convincing evidence that the character of the neighborhood had changed. The trial court noted that Wrigley's evidence consisted of general statements and nothing more, far short of the clear-and-convincing burden. Upon review of the record, we find the trial court was correct. Wrigley's evidence was based upon general statements, predictions about future need, and other vague speculations. Wrigley failed to prove a change in the neighborhood as well as any statistics showing a public need. In reality, many examples of a purported change in the area were in accordance with the neighborhood's original zoning plan, which is not considered a material change. *See Cockrell*, 950 So. 2d at 1092 (¶14). In *Cockrell*, we reversed a decision to rezone property when there were only "vague references" on which the board of supervisors relied. *Id*. at 1094 (¶17). This Court noted that "there were no previous rezonings, statistics or mapped circumstances of growing change[,] and no quantification of any increases." *Id*.

¶14. As did the trial court, we conclude the evidence presented by Wrigley and relied upon by the Board failed to meet the clear-and-convincing burden; thus, we affirm the trial court's decision to reverse the Board's decision.

5

¶15. **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING, P.J., ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND BARNES, J.**

**CARLTON, J., DISSENTING:**

¶16. I respectfully dissent because I would reverse and render the circuit court's judgment and reinstate the decision of the governing board of supervisors.

¶17. The Board decided to rezone the property at issue from A-1, a general agricultural district, to A-2, an agricultural residential district (large-lot development), which would allow the development of large-lot affordable residential homes on safer and higher ground north of Interstate 10. The record reflects that substantial credible evidence supported the Board's decision to rezone the property, and substantial evidence showed that the Board's decision was supported by clear and convincing evidence demonstrating the following: (1) a change in the character of the neighborhood; (2) a population shift; and (3) an increased public need for affordable residential housing after Hurricane Katrina, the implementation of new residential housing codes, and the increase in home insurance rates in the coastal area.

¶18. The evidence before the Board sufficiently established a population shift north and a public need for large-lot affordable quality homes on land that is located in higher and dryer areas, such as the land at issue in this case. The Mississippi Supreme Court has long recognized that such evidence of public need and associated change in the character of a neighborhood provides a sufficient evidentiary basis for a zoning change. *See generally*

6

*Edwards v. Harrison Cnty. Bd. of Supervisors*, 22 So. 3d 268, 275-79 (¶¶24-36) (Miss. 2009) (acknowledging a substantial change in the neighborhood and a public need post-Hurricane Katrina). The judiciary exceeds its role in such cases when it weighs de novo the evidence considered by the governing board of supervisors instead of abiding by the applicable standard of review to determine whether the decision was supported by substantial evidence or was arbitrary and capricious.[2]

¶19.    I respectfully submit that an application of our standard of review to the Board's decision requires reinstatement of the Board's decision. I must acknowledge that the decision of a governing board of supervisors to rezone will be set aside only if the record clearly shows the decision is arbitrary, capricious, discriminatory, illegal, or without a substantial evidentiary basis. *See Edwards*, 22 So. 3d at 274 (¶17). *See also* URCCC 5.03 (discussing the scope of appeals from administrative agencies).

¶20.    A review of the evidence and testimony the Board received before rendering its decision reflects that the decision was neither arbitrary nor capricious. Rather, the evidence shows that, in approving the application and request to rezone the land in question from A-1 to A-2 for development of large-lot homes to provide affordable housing north of Interstate

---

[2] *See Edwards*, 22 So. 3d at 279 (¶36) (acknowledging a substantial change in the neighborhood due to the devastation Hurricane Katrina caused to the Mississippi Gulf Coast); *Childs v. Hancock Cnty. Bd. of Supervisors*, 1 So. 3d 855, 861 (¶19) (Miss. 2009) (determining that substantial evidence supported a board's finding of public need for economic development in an area devastated by Hurricane Katrina and that a lack of economic development in the area supported the decision to rezone). *See also Thomas v. Bd. of Supervisors of Panola Cnty.*, 45 So. 3d 1173, 1180-81 (¶¶20-22) (Miss. 2010) (finding that substantial evidence showed a public need for a recycling facility and supported the rezoning of an agricultural area).

10, the Board based its decision upon clear and convincing evidence.[3]  The record also reflects that the Board acted consistently with its own comprehensive plan adopted post-Hurricane Katrina.

¶21.    In the present case, the evidence of changed character in the neighborhood included the development of additional neighborhoods to the north of the property, as well as improvements to and extension of utilities, water, and sewer services to the previously unserved area at issue.[4]  Testimony before the Board provided that such new utility, water, and sewer service to the area stood as a leading indicator of a change in the neighborhood.[5] The record reflects that the extension of and improvements to the utility, water, and sewer services were begun after the devastation to the Mississippi Gulf Coast by Hurricane Katrina. These steps were taken to accommodate the public need for residential housing by providing safer residential housing north of Interstate 10 and north of the coastal waters in accordance with the implementation of a state plan and Jackson County's own comprehensive zoning plan. *See generally Edwards*, 22 So. 3d at 276 (¶26) (acknowledging that substantial change occurred to the coastal area due to the devastation of Hurricane Katrina).  The record also

---

[3] *See Childs*, 1 So. 3d at 859-60 (¶13) (citing the standard of review applicable to determine whether the character of a neighborhood has changed so as to justify rezoning).

[4] *Cf. Gentry v. City of Baldwyn*, 821 So. 2d 870, 873-74 (¶¶9-12) (Miss. Ct. App. 2002) (recognizing similar development and improved utilities in the area as part of the evidence sufficient to show a change in the character of the neighborhood and to support the city's rezoning decision).

[5] *See generally Edwards,* 22 So. 3d at 279 (¶36) (finding that substantial evidence supported a board's decision that the character of the neighborhood had changed post-Hurricane Katrina and that a public need existed for rezoning to foster economic and commercial development).

contains evidence that the population of the area is shifting north, away from the coastline, and to higher ground.

¶22. Also indicating a change in the character of the neighborhood, the record reflects that the insurance rates for housing in the coastal areas near the water increased after Hurricane Katrina and that these increased rates resulted in residents' inability to afford housing in areas too close to the water and coastline areas. In addition to increased insurance rates for housing, the record reflects that enhanced building codes were also implemented after Hurricane Katrina, further diminishing the availability of affordable housing in areas near the water and coastline. The record also contains evidence of new construction of Highway 57 toward the site at issue, providing new highway access for the area.

¶23. As acknowledged, the record reflects that Jackson County adopted a new comprehensive zoning plan after Hurricane Katrina to assist in improvements to infrastructure such as utilities, water, and sewer services to allow development of affordable housing in certain areas, including the area at issue, that were on higher and safer ground north of Interstate 10. As acknowledged by the supreme court in *Edwards*:

> Mississippi statutes provide for comprehensive zoning plans for municipalities and counties. Mississippi Code [Annotated] [s]ection 11-1-17(1)(a) [(Rev. 2002)] provides in part that [t]he governing authority of each municipality and county may provide for the preparation, adoption, amendment, extension[,] and carrying out of a comprehensive plan for the purpose of bringing about coordinated physical development in accordance with present and future needs.

*Edwards*, 22 So. 3d at 275 (¶21) (citations and internal quotation marks omitted). The *Edwards* court further acknowledged that a balance must be struck with rezoning issues to

9

provide for inevitable change in an orderly manner to meet public needs. *Id.*

¶24. In the present case, the record reflects unrefuted testimony that the Mississippi Gulf Coast counties received approximately ten million dollars after Hurricane Katrina to implement comprehensive plans and to assist with improvements to and extensions of utility, water, and sewer services to enable development of affordable residential homes in safer coastal areas. Testimony also demonstrated the public need for affordable and quality housing in the area. An established realtor testified that the Mississippi Gulf Coast area at issue lacked affordable new residential housing north of Interstate 10. The realtor further testified that no new housing was available for his clientele consisting primarily of medical professionals and engineers who worked in the area.

¶25. In addition, the owner of the property at issue testified that the proposed development included no Section 8 or federal-subsidized housing but rather included only low-density development with larger quality homes and larger lots. The property owner also testified that residents sought to live north of Interstate 10 because of population growth and because the location was higher and dryer and, therefore, safer.

¶26. Testimony from the developer, Wrigley, provided that the initial request to change the zoning from A-1 to A-3 was modified to a request to change the zoning to A-2. Wrigley explained that the change in the request was modified to A-2 based upon and to accommodate the concerns of residents. Wrigley further stated that the development would contain no more lots than if zoning remained at A-1. Wrigley explained that, while A-2 zoning would allow for the development of half-acre lots, the development would still be

10

capped at the number of lots allowed for A-1 zoning.

¶27. Based upon the foregoing, I respectfully submit that substantial evidence reflects that the Board based its decision upon clear and convincing evidence of a change in the character of the neighborhood and that substantial evidence in the record supported the Board's decision to grant the requested rezoning from A-1 to A-2. Furthermore, I find the record reflects that the Board's decision was not arbitrary or capricious and that the judiciary is therefore without authority to reverse the decision of this governing body.[6]

**GRIFFIS, P.J., AND BARNES, J., JOIN THIS OPINION.**

---

[6] *See Edwards*, 22 So. 3d at 274 (¶17).